### PRINCE *versus* THE STATE.

1. This court is not particular as to the method of referring criminal cases, on novel and difficult points; provided, it clearly appears by the record, that the reference has been made by the court.
2. It is not necessary that the points reserved, in a criminal case, as novel and difficult, should be certified under the hand of the judge.
3. In an indictment, under the statute, for negro stealing, it is no cause of challenge to the array, that the sheriff, who assisted in summoning the original venire, was one of the owners of the slave, alleged to have been stolen, and that he assisted in drawing the jury.
4. The offence of negro stealing is not embraced in the limitation, prescribed in the statute of 1807,* which limits the prosecution of certain offences to one year.

This was an indictment, in Pike Circuit court, for negro stealing; in which the prisoner was found guilty. On the following points, as novel and difficult, the case was referred to this court.

---

*See Aikin's Digest, page 122, §46.

First—Whether the sheriff, being one of the owners of the slave, charged to have been stolen, could legally assist in the selection of the names of the jurors; and whether he was competent to assist in drawing the original venire from the jury box: and if his having done so, was not a good cause of challenge to the array.

Second—Whether the offence was not barred by the statute of limitations; more than one year having intervened between the alleged commission of the offence, and the finding of the bill of indictment.

*Vandegraaff*, for the prisoner—*The Attorney General, contra.*

TAYLOR, J.—Two preliminary questions have been made, in this case, by the Attorney General.

1. That the points reserved by the court below, as novel and difficult, should have been signed by the judge, in the manner of a bill of exceptions.

2. That the record is not sufficiently authenticated.

The whole record is extremely inartificially made out, and without the least regard to connexion. It appears, however, that the several objections to the proceedings below, made by the prisoner, and reserved for the opinion of this court, were spread upon the record; succeeding which is a statement, that the questions arising thereon are referred to this court, as novel and difficult.

The statute which authorises the circuit court to refer questions, arising upon the trial of criminal cases, which they deem novel and difficult, to this court for its opinion thereon, does not prescribe the manner

in which it is to be done.   It is, of course, left to the courts, to adopt that method, which they shall deem most expedient.   This court would not be very particular with respect to the manner, so that it clearly appeared by the record, that the reference was made by the Circuit court.   No good reason, however, can be perceived for requiring this part of the record to be certified under the hand of the judge, more than any other act of the court.

The record shows the proceedings of the court, as well as of the parties; and it is to facilitate business that a clerk is employed to enter these proceedings; but they are no less the act of the Judge on that account.   I conceive that convenience is most promoted by pursuing the method which has been adopted in this case.

The second point is considered equally untenable. The certificate, it is true, is not technically drawn. Instead of certifying that he had given a true transcript of the record of the case, as it remained in his office, the clerk certifies, "that the foregoing pages contain a true statement touching said cause, as the same remains now on file in my said office."

Were this a case in which the whole record could be brought before us, for revision, the objection might be a good one, as there might be a "statement touching the cause," without there being a complete transcript of the record; the one expression not being tantamount to the other.   But it sufficiently appears that this "statement" contains all that was referred to this court; and shows what points were so referred, and, if it did not, the prejudice would not be to the State, but to the prisoner.

I come now, to consider the points referred.

The prisoner was indicted for stealing a slave.—When put upon his trial, he objected to the jurors drawn and summoned on the original venire: "First—Because the sheriff, who, it appeared, was one of the owners of the slave, charged to have been stolen, had assisted, since the prosecution was commenced, in selecting the names of competent persons for jurors, and placing them in the jury box, pursuant to law."

"Second—Because the said sheriff had aided in drawing from the jury box, the jurors summoned on the original venire."

"It appeared in evidence that the offence was committed early in April, or in the latter part of March, 1830; an indictment was found in 1831, and at the instance of the State of" (at) "this term, a *nolle prosequi* was entered, the prisoner having been, since the finding of said indictment, in custody. The present indictment was found at this term."

"The prisoner's counsel moved the court, to instruct the jury, that the statute of limitations operated as a bar to the conviction.

"The prisoner, after the return of the verdict, moved, in arrest of judgment, because the tales jurors were summoned by the coronor, pursuant to an order of the court, for that purpose, without a *venire facias*, in his hands, directing him to summon them.

"After verdict, the prisoner also moved, in arrest of judgment, that the grand jury were irregularly drawn, for the objections made to the original *venire.* No objection was made to the competency of the coroner.

"Which several objections and motions, were over-

ruled by the court, and the questions of law there-upon arising, referred to the Supreme court, as novel and difficult."

Two points, only, have been insisted on, in argument—the others being abandoned.

1. The conviction was barred, by the statute of limitations.

2. The challenge to the array of the jurors, whose names were specified, in the *venire facias*, should have been allowed.

The statute of limitations declares, "that no person or persons, shall be prosecuted, tried, or punished, for any offence, wilful murder, arson, forgery, counterfeiting and larceny excepted, unless the indictment, presentment, or information for the same, be found or exhibited within one year next, after the offence shall be done or committed."

It is conceded, by the counsel for the prisoner, that the term "larceny," in its general and technical signification, includes the offence charged in the indictment; but, it is contended, that our statutes have distinguished the crime of slave-stealing, from other larcenies.; that it is treated of distinctly in our laws, and a different punishment provided for its perpetration.

It is certainly true, that, in prescribing the punishment for crimes, the general assembly has made slave stealing, capital; and awarded a milder punishment as the penalty, for larceny in general.

The 18th section of the act of 1807,[a] entitled "an act, for the punishment of crimes and misdemeanors,"[a] provides; "That if any person or persons shall steal any negro, or mulatto slave, whatsoever, out

[a] Toul. Dig. 208

of, or from the possession of the owner, or overseer of such slave; the persons so offending shall be, and are hereby, declared to be felons, and shall suffer death."

The fourteenth section of the same act, is in the following words: "That any person convicted of larceny, to the value of twenty dollars or upwards, or, as accessary thereto, shall restore the goods or chattels, so stolen, to the rightful owner or owners thereof; or, shall pay to him, her, or them, the value of such goods or chattels, as shall not be restored : and, moreover, shall receive thirty-nine lashes, upon his or her bare back, and shall stand in the pillory, at the discretion of the court; so as not to exceed two hours in each day, for three days."

It is certain, that, so far as relates to the punishment, a great difference is made between slave stealing, and the offences intended to be included, in the fourteenth section, in the term "larceny." But, many other crimes, which the generic term would embrace, are distinguished from those included in that section, by a special provision, with regard to the punishment. Horse stealing and hog stealing are among the number; and, although the stealing of bonds, bills of exchange, promissory notes, &c, is attended by the same penalties, as the larcenies included in the fourteenth section, yet it is provided for, in a distinct section. Could the legislature have intended, that prosecutions, for all the offences, included, technically, in the generic term larceny, but the punishment for which is thus distinctly provided for, should be embraced by the statute of limitations? Some of them are, evidently, viewed, by the statutes, as more aggravated, in their character,

than those referred to, in the fourteenth section.— The offence of which the prisoner has been convicted, and horse stealing, particularly, are of this description: the latter is punished by a fine, not exceeding five hundred dollars, imprisonment, not exceeding one year, thirty-nine lashes, and branding, with the letter "T," either in the face, or on the right hand. The stealing of bonds, &c. is considered, of the same grade with larcenies generally.

Certainly, no reason can be perceived, which could have induced the legislature, to make so great a distinction, between crimes of similar character— thereby giving impunity to persons, who have been guilty of some of them, and those the most aggravated, who may escape detection for a year—and subjecting those guilty of others to punishment, at any time during their lives, no matter how remote from the time at which the crime was perpetrated.

But, it is urged, that nothing can be inferred from the magnitude of the offence—because, robbery, rape, burglary, and some other felonies, are not excepted from the operation of the statute. It is true, that the excepted offences appear to have been somewhat arbitrarily selected ; yet, we believe we are not authorised to restrain the meaning of the term, when used in the act of limitations ; because, if the legislature had so intended, it is presumable, that intention would have been as clearly expressed, as it was with regard to the punishment.

The objection made to the jurors, is next to be considered.

Jurors, in this State, are summoned altogether by virtue of our statutory provisions. The law, in substance, requires, that at stated periods, the sheriff

of each county, shall furnish to the clerks of the Circuit courts, a list of the freeholders and householders in his county : immediately after the sheriff shall have returned to the clerk such list, it shall be the duty of the judge of the county court, in and for said county ; the commissioners of revenue and roads ; the clerk of the Circuit court, and sheriff, to assemble at the court house of the county, on a day to be appointed, by the clerk of the Circuit court, and to select from the list of freeholders and house holders, returned by the sheriff, such persons as they or a majority of them, may deem qualified to serve on juries ; and the names of the persons so selected, shall be put into a box, to be kept by the clerk, for that purpose ; and the persons, who shall be selected, in manner aforesaid, shall be liable to serve on juries ; and, if the judge, &c. shall fail to assemble, the clerk and sheriff shall select the jurors.

After the jurors are selected as aforesaid, and their names put into a box, and shaken together, it is made the duty of the clerk and sheriff, to draw from the box, in open court, or if omitted to be done in open court, the clerk and sheriff shall perform the duty, thirty-six jurors ; for whom the clerk shall issue a *venire facias*, returnable to the next term. After the proper number of jurors is drawn, the names so drawn, are required to be put into another box, to be kept by the clerk for that purpose, where they shall remain until the whole of the names of the jurors selected as aforesaid, are drawn for successive terms. Out of the jurors summoned by virtue of the *venire facias*, the grand jury is to be drawn, by ballot, in open court; and the rest are to act as petit jurors.

A provision is thus made by law of the mode by

which the attendance of jurors, both grand and petit, is to be secured, throughout the State. Grand Jurors can be summoned, in no other way : by another provision, by-standers, may be summoned to make up for a deficiency in the number of petit jurors, of those regularly summoned; and in capital cases, the accused is to be served with "a list of the jury, who are to pass on his, or her, trial, at least two entire days before he, or she, shall be tried."

The guards which are thus afforded, to prevent the effect of prejudice, or unfriendly feeling, from any of the officers engaged in selecting or summoning the jurors, included in the original *venire*, against any suitor in court, or a person charged with a public offence, appear to be complete. It is difficult to conceive how the clerk, sheriff, or any other person, could manage to pack a jury, or get the name of any particular person, improperly on the *venire*. The persons to serve as jurors, are to be selected from all the freeholders, and house-holders, in the county; all being included in the selection, except such as may be rejected for the want of intellectual, or moral qualification. If any are summoned who are not freeholders, or householders, they are incompetent, and liable to be challenged, for this cause. Without a combination among the officers engaged in drawing the names from the box, which are to be inserted in the *venire facias*, it is almost impossible, that any injustice can be done, through the vindictiveness of one of them. So remote is the probability that success could attend an attempt of the kind, that it would look like searching for some means to permit the guilty to escape, to reverse a cause for a decision like the one in this case. And when we consider the effects which

would attend upon such a decision, it certainly would require a crying evil to authorise it. Even if the court could provide other jurors, in the place of those summoned, by virtue of the *venire facias*, and who were not members of the grand jury, how would a grand jury be obtained. The right of challenge would apply equally to the grand and petit jurors, and only one method is provided, by our laws, for summoning and empanelling the former. If the array summoned, under the provisions of the statute, were liable to be challenged, no person accused of a criminal offence could be indicted, in such case, until the sheriff, for the time being, went out of office.

I am aware, that, in England, a challenge for favor is permitted, both of grand and petit jurors, when it is shown that the sheriff, probably, was prejudiced against the accused, and I certainly should consider it as strong a ground for challenge of bystanders here, as it would be there. But the opportunity afforded to the sheriff there, of summoning jurors by virtue of the *venire facias*, who would suit his purposes, is incomparably greater, than here; and if the mode of selecting jurors prescribed in this State, had existed in England, I cannot believe the doctrines contained in 1st Chitty's criminal law, page 437 and 3d Blackstone's commentaries, 359, would ever have prevailed.

The judgment must be affirmed.