## WILLIAM E. WILSON, Respondent, v. THE SIOUX CONSOLIDATED MINING CO., Appellant.

1. *Master and Servant.*

    Where a foreman of a mine, as the agent of the company, selects an employé to take the place temporarily of another employé who is excused from work, and the person so selected is subject to the direction and control of the company, which may discharge him at any time, the relationship between him and the company is that of master and servant.

2. *Liability of Company for Acts of its Agents.*

    Where the master consents to the selection or employment of a servant, directs and controls such servant in the labor he is to perform, and has the right to discharge him, the master is liable for the negligent acts of his agents.

3. *Vicious Animal—Scienter.*

    The information given to the plaintiff by the foreman, that a mare which the former was to use was "high-lived," was not sufficient to warn him of the vicious and dangerous habits of the animal, when these habits were known to the foreman.

4. *Duty of Master to Provide a Safe Animal.*

    The plaintiff had the right to assume that his employer had discharged his duty by furnishing him a reasonably safe horse with which he could perform his labor.

5. *Exceptions.*

    Exceptions to instructions of the court to the jury, to be of avail in an appellate court, in a case where any portion of the charge is correct, must be strictly confined to the objectionable matter, and the judge's attention called thereto at the time of the delivery of the charge.

6. *Contributory Negligence.*

    A question of contributory negligence is one of fact for the jury to determine.

(No. 899.  Decided March 5, 1898.)

Appeal from the Fourth district court. W. N. Dusenberry, *Judge.*

Action by William E. Wilson against the Sioux Consolidated Mining Company to recover for personal injuries. From a judgment for plaintiff, defendant appeals. *Affirmed.*

*Bennett, Harkness, Howat, Bradley & Richards,* for appellant.

Though the defendant may have known of the vicious nature of the mare and instructed the plaintiff to handle her without imparting such knowledge to him, still if, through his experience the plaintiff became aware of the same facts, by continuing in the employment, the risks thereof were assumed by him. *Green & Coates St. Pass. Ry. Co.* v. *Bresmer,* 97 Pa. St. 103; *Powers* v. *N. Y. L. E. & W. Ry. Co.,* 98 N. Y. 279; *Jenney Elec. L. & P. Co.* v. *Murphy* (Ind.), 18 N. E. 30; *Lehman* v. *Van Nostrand* (Mass.), 42 N. E. 1125; *Pingree* v. *Leyland,* 135 Mass. 398; *Yeaton* v. *Boston & Lowell R. R. Corp.,* 135 Mass. 418; *Cariack* v. *Merchants Woolen C.,* 146 Mass. 182; *Tuckham* v. *Sawyer,* 153 Mass. 485; *Sull'van* v. *India Mfg. Co.,* 113 Mass. 396; *Baker* v. *Western & Atlantic R. R. Co.,* 68 Ga. 699; *Bell* v. *Western & Atlantic R. R. Co.,* 70 Ga. 566.

*Powers, Straup & Lippman* and *Jos. E. Page,* for respondent.

This action was brought to recover damages for personal injuries received in the defendant's mine. The complaint, among other things, charges that the plaintiff was employed by the defendant to dig and haul ore out of the mine with a horse; that the defendant negligently furnished him a vicious, dangerous, unfit, and unsafe horse,

knowing that it was unfit for such use, and knowing that the horse would strike, kick, bite, and plunge when hitched to cars; and that while the plaintiff was so hauling ore, unaware of the vicious character of the horse, and in the exercise of due care, the horse became unmanageable, violently struck him in the back with the forefeet, throwing him on the ground and track, and, suddenly plunging and starting, pulled the cars over and upon him, and caused the injuries of which he complains. The answer denies the allegations of the complaint, and avers that the injuries were caused by the plaintiff's own want of care. It appears from the evidence that, at the time of the accident, the defendant was operating its mine, and hauling the ore therefrom through a tunnel in cars pulled by a mare. The width of the tunnel was about 4 feet in the clear, and it was about 850 feet long, and straight for about 600 feet, to a point where a curve began. From this point it was down grade to its mouth. About 70 feet from the curve, towards the entrance of the tunnel, there was a place cut out, for a receiver, 4 feet from the side of the tunnel. There men using the tunnel could avoid the passing cars. On the 18th of April, 1896, the plaintiff commenced working for the defendant in its mine, in the place of an employé who had obtained leave of absence, and was to continue until the return of the employé. This arrangement was made with the consent of, and the plaintiff was accepted as a workman by; the foreman of the mine, who directed him in the employment, told him to get the horse, and showed him what to do. The foreman told him that the horse was "high-lived," but said nothing to him of its vicious and dangerous character, although it appears that both he and the superintendent of the mine had seen the mare balk, kick, and plunge when hitched to the cars, and the foreman had seen her springing forward and back-

ward, and jerking the cars from the track. The plaintiff,. while accustomed to handling horses, knew nothing of the vicious character of this mare, having never seen her before, and it appears he did not have much trouble with the horse on the first day, except that she threw the cars. off from the track once by lunging, and so on the second day previous to the accident. On the occasion of the injury, which occurred on the second day of his employment,. the plaintiff was leading the mare hitched to the cars in the tunnel, and another employé was attending to the brake. The stick, used for braking, broke, and the cars. were stopped. When the plaintiff attempted to start again, the mare balked and lunged until a coupling hook, between the first and second cars broke, when the car ran, against her, and she became unmanageable and vicious, biting, striking, and kicking, and the plaintiff was injured in the manner substantially as alleged in the complaint. It also appears that the front car at this time had just passed the receiver, and that the plaintiff was unable to get to a place of safety. At the trial a verdict was returned in favor of the plaintiff in the sum of $7,000, and judgment entered accordingly. Thereupon the defendant appealed.

After a statement of the case as above, Bartch, J., delivered the opinion of the court:

The appellant contends that the respondent, at the time of the occurrence, was not its employé, and that it owed him no duty to acquaint him with the vicious character of the horse. It is true that the respondent was not one of its regular employés. The company, through its agent, however, entered into an arrangement, with one who was its employé, whereby the respondent was to enter into its service for a certain time in the place of such employé.

Its agent was a party to the selection of this particular person so to enter its service. He was subject to its direction and control, and it had the right to discharge him at any time. When the accident happened he was performing labor in accordance with the orders and will of its agent. Under these circumstances, the relations of master and servant clearly existed, and the respondent must be regarded as its employé, and not as a servant of the employé whose place he was to fill. The company must, therefore, be held to have owed him the same duty respecting care and prudence in providing safe means and appliances for the operation of its mine as it owed to any other employé, and as being responsible to him for the negligence of its agents in the same manner as it would be to any one of its servants. It was the duty of the foreman, its agent, to inform the respondent, upon entering its service, of the vicious propensities of the mare, and, the agent having failed to do so, the employer became responsible for any injury which resulted to him because of such neglect of duty. Where the master consents to the selection or employment of a servant, directs and controls such servant in the labor he is to perform, and has the right to discharge him, the master is liable for injuries received by the servant while in the performance of his duties through the negligent acts of the master's agents. Shear. & R. Neg. § 160; *Johnson* v. *Water Co.*, 71 Wis. 553; *Town of Pawlet* v. *Rutland & W. R. Co.*, 28 Vt. 397; *Railroad Co.* v. *Norwood*, 62 Miss. 565; *Brown* v. *Smith* (Ga.), 12 S. E. 411; *Manufacturing Co.* v. *Rahn*, 132 U. S. 518.

It is further contended that the respondent voluntarily assumed the risk of such employment, and therefore cannot recover. Whether or not the respondent was, before the accident, aware of the vicious and dangerous charac-

ter of the horse, was a question of fact for the jury, which the jury must have found against the appellant, and we think there is ample evidence in the record to sustain the finding. It is true the foreman testified that he informed the plaintiff that the mare was "high-lived," but this does not necessarily imply that she was vicious and dangerous for a person accustomed to handling horses. Such an expression, as is well known, is frequently applied to horses which are just the opposite. When a horse is high-spirited, it does not necessarily follow that he has vicious propensities. That epithet applied to the horse in this case, without further explanation on the part of the foreman, was more likely to mislead the respondent, and lull him into a sense of security from vicious habits, than warn him of the danger which actually existed. Aside from this, however, the testimony shows that, previous to his employment, the respondent knew nothing of the vicious and dangerous propensities of the animal, and that nothing occurred previous to the accident which was of such an obviously dangerous character that a man of ordinary care and prudence would have refused to haul the cars with the animal before the time of the occurrence, which took place on the second day of the employment. Under such circumstances, the court would not be justified in holding that the respondent assumed the risk of the injury. He had a right to assume that his employer had discharged his duty, and furnished him a reasonably safe horse with which to perform his labor. *Mangum* v. *Mining Co.*, 15 Utah 535; *George H. Harmond Co.* v. *Johnson* (Neb.), 56 N. W. 967.

It is also insisted that the injury was caused by the respondent's own want of proper care in the performance of his duties. The question of contributory negligence was one of fact, which was properly submitted to the jury,

and the evidence in the record is not such as would warrant us in interfering with their finding in this regard. *Saunders* v. *Southern Pac. Co.*, 13 Utah 275.

Nor is the inference that the breaking of the coupling hook was the proximate cause of the injury justified by the evidence. The hook was a substantial one, and it is apparent from the testimony that its breaking was due to the vicious actions of the horse.

Errors relating to the instructions of the court were also assigned, but, in the absence of proper exceptions, we cannot consider them. "An exception, to be of avail in an appellate court, should, in a case where any portion of the charge is correct, be strictly confined to the objectionable matter, and the judge's attention called thereto at the time of the delivery of the charge, so that an opportunity may be afforded him to make a correction." *Lowe* v. *Salt Lake City*, 13 Utah 91.

We find no reversible error in the record. The judgment is affirmed.

Zane, C. J., and Miner, J., concur.