AQUILA NEBEKER AND E. A. SMITH, CO-PARTNERS DOING BUSINESS UNDER THE NAME OF NEBEKER AND SMITH, RESPONDENTS, *v.* GEORGE HARVEY, C. J. ANDERSEN, B. F. STEWART, AND WILLIAM B. HUFFMAN, APPELLANTS.

REPLEVIN — CAUSE OF ACTION — WHERE ARISES. PLEADING — COMPLAINT — IN REPLEVIN — ALLEGATION OF "WRONGFUL TAKING" — UNLAWFUL DETENTION. JUDGMENT — WITHIN THE ISSUE — WHEN NOT REVERSED. PRACTICE — OBJECTIONS — THAT VERDICT IS NOT SUPPORTED BY THE EVIDENCE — WHEN NOT CONSIDERED — EVIDENCE — WRITTEN CONTRACT — IMPROPERLY EXCLUDED — PAROL EVIDENCE SUBSEQUENTLY ADMITTED — HARMLESS ERROR. EXCEPTIONS — HOW TAKEN — SEC. 3151, R. S. 1898.

*Replevin — Cause of Action — Where Arises.*

A cause of action in replevin in the *detinet* arises when and where the demand is made and the refusal occurs; and the fact that thereafter process may have been served in another county is immaterial, because the question is not where the property was when process was served; but where it was when demand was made for its possession.[1]

---

[1] *Woodward* v. *Edmunds*, 20 Utah, 118.

*Pleading — Complaint — In Replevin — Allegation of " Wrongful Taking " — Unlawful Detention.*

The fact that a complaint contains an allegation of "wrongful taking," does not furnish a sufficient reason for setting aside a verdict for unlawful detention, when such detention was not only the main issue, but was the gravamen of the action, and when the case was tried mainly on that theory and no objection to the complaint, based on such allegation, was raised by special plea, and the verdict is supported by the evidence.

*Judgment — Within the Issue — When Not Reversed.*

Where the judgment comes within the issue, and the facts show a right of recovery in the plaintiff, the mere fact that language is used in the complaint which technically applies to another form of action, will not, under circumstances as in this case, warrant a reversal.[2]

*Practice — Objections — That Verdict Is Not Supported by the Evidence — When Not Considered.*

When a case is tried upon the theory that all or none of the defendants are liable, and when the evidence tends to show that all manifested an interest in the property in litigation and were directly or indirectly in possession thereof, and no exception was taken or error assigned respecting the insufficiency of the evidence to sustain the verdict and judgment as to any particular defendant, a contention on appeal, that the evidence was insufficient to support the verdict as to certain defendants, can not avail.

*Evidence — Written¯ Contract — Improperly Excluded — Parol Evidence Subsequently Admitted — Harmless Error*

When a written contract, clearly admissible in evidence, is improperly excluded on the trial, no error is committed in afterward admitting evidence showing that such contract was in fact executed, the terms thereof and the acts of the parties thereunder.

*Exceptions — How Taken — Sec. 3151, R. S. 1898.*

Notwithstanding the provision of Sec. 3151, R. S. 1898, that " no reason need be assigned for exceptions," wholesale ex-

---

[2] *Kuhn* v. *McAllister*, 1 Utah, 273; *Johnson* v. *Meagher*, 14 Utah, 426.

ceptions without reference to the specific matter claimed to be objectionable, are not authorized, and, to be of avail, in an appellate court, exceptions must specify the particular objectionable matter.[3]

(Decided April 17, 1900.)

Appeal from the Third District Court, Salt Lake County, Hon. A. N. Cherry, *Judge.*

Action in replevin for certain cattle or their value, the complaint alleges that defendants wrongfully and unlawfully took the cattle from the possession of plaintiffs in Salt Lake City and County, and that after demand had been made, they unlawfully withheld such possession from the plaintiffs. From a judgment for plaintiffs, defendants appealed. *Affirmed.*

*Messrs. Richards & Varian,* for appellants.

Replevin in the *cepit* can not be maintained against any person who came lawfully into possession. A. and E. Ency. Law, Vol. 20, pp. 1060, 1061; *Simmons* v. *Jenkins,* 75 Ill., 482.

The action will not lie against one who never has been in the actual or constructive possession. Cobbey Replevin (1890), Secs. 132–65.

"Replevin can not be maintained in this commonwealth against a person who has no possession or control of the goods to be replevined; replevined goods can not be restored and returned to a person from whom they were never taken; and such person can not be made a defendant, sole or joint, in an action of replevin." *Richardson* v. *Reed,* 4 Gray, Mass., 444; *Hall* v. *White,* 106 Mass., 600; *Sweet* v. *Boyce,* 134 Mass., 381; Cobbey Replevin,

---

[3] *Pool* v. *S. P. Ry. Co.,* 20 Utah, 210; 58, P. 336; *Brigham City* v. *Crawford,* 20 Utah, 130; 57, P. 842; *Wilson* v. *Sioux Con. Mng. Co.,* 16 Utah, 91; *People* v. *Hart,* 10 Utah, 204; *Lowe* v. *Salt Lake City,* 13 Utah, 91.

Secs. 432, 433, 461, 464; *Gasdner* v. *Brown*, Nev., 37 Pac., 240; *De Priest* v. *Mc Kinstry*, Neb., 56 N. W., 806.

It is submitted that there is no hard and fast rule of law that where property is sold to be paid for on delivery, such payment is a condition precedent to the title passing. Delivery is not essential to perfect a sale as between the parties. *Danley* v. *Rector*, 10 Ark., 211, 50 Am. Dec., 242; *Wade* v. *Moffett*, 21 Ill., 110; 74 Am. Dec., 79; *Girdner* v. *Beswick*, 69 Cal., 113; Elgee Cotton Cases, 22 Wall., 191.

*James H. Moyle, Esq.*, and *Frank K. Nebeker, Esq.*, for respondent.

All the court is now to determine is, whether there is evidence to support the verdict. There is abundant proof of detention, both in the pleadings and evidence, and we insist that the verdict should stand. 1 Black on Judgments, Sec. 101.

Both the unlawful taking and detention took place in Salt Lake City, but even if the taking had been in Kane County or Arizona, and the detention here, then the verdict should stand.

If the wrongful act of appellants had taken place in Arizona, then the action could have been brought wherever the defendant should be found in Utah. *Steed* v. *Harvey*, 18 Utah, 367.

For under the code a complaint may have a double aspect, and the court may give judgment in accordance with the facts proven on either issue of the case. *Stevens* v. *Mayor*, etc., 84 N. Y., 304.; *Hale* v. *Omaha National Bank*, 49 N. Y., 631; *Kuhn* v. *Mc Allister*, 1 Utah, 273.

It makes no difference what is the form of the action, or whether it is legal or equitable, or both. If the judg-

ment comes within any issue of the complaint is all that is required. *Kuhn* v. *Mc Allister*, 1 Utah, 273. Same case on appeal, *Mc Allister* v. *Kuhn*, 96 U. S., 87; *Wade* v. *Hancock*, 76 Va., 620; Black on Judgments, Vol. 1, page 161, Sec. 131, Note 26; *Johnson* v. *Hathorn*, 2d Abb. App. Dec., 465; Second Ed. Pomeroy's Remedies and Remedial Rights, 453.

This court has held that when a complaint can be con-strued in two ways, it must be given that construction which will support the complaint. *Johnson* v. *Meagher*, 14 Utah, 436; Black on Judgments, Vol. 1, Sec. 100, page 108.

Where personal property is sold to be paid for on de-livery, such payment is a condition precedent, and until it is made or waived, no title passes to the vendee. 6 Am. & E. Ency. of Law, 2d ed., 456, and Note 4, 457, and Note 1, with cases cited.

Benj. on Sales, 7th ed., 298, with cases cited on page 299.

### STATEMENT OF FACTS.

This is an action in replevin brought in Salt Lake County, to recover 208 head of cattle, or $2,200, their value. It is alleged in the complaint that the defendants wrongfully and unlawfully took the cattle from the pos-session of the plaintiffs in Salt Lake City and County, and that after demand made they unlawfully withheld such possession from the plaintiffs. In the answer it is averred that the defendants were the owners of the cattle; that " at the City and County of Salt Lake," the plaintiffs wrongfully caused the cattle to be taken from the posses-sion of the defendants and detained them for two days; and that because of such wrongful taking and detention,

the "defendants were obliged to keep and feed such cattle at the stock yards in Salt Lake City, Utah, two days," at an expense of $133.72.

From the evidence it appears that the plaintiffs had a herd of cattle ranging in Coconina County, Arizona, and Kane County, Utah, and that plaintiff Nebeker, on February 24, 1897, entered into an agreement with A. L. Stewart and B. F. Stewart, as follows:

"This is to certify that I have this day sold and contracted my entire brand of cattle branded N left rib, $\widehat{N}$ left rib and $\widehat{X}$ either hip, said cattle ranging in Coconina County, Arizona, and Kane County, Utah, to B. F. Stewart and A. L. Stewart, to be delivered between March 20, 1897, and July 20, 1897, in bunches of three hundred head or more. Scattering cattle not delivered between these dates to be guessed or ' slumped ' off.

Cattle are to be paid for at the rate of thirteen dollars per head. Calves of 1897 to be thrown in, and which are under the age of six months. Saddle horses to be thrown in after delivery of cattle.

The sum of thirty-seven hundred and fifty dollars ($3,750) is paid down in consideration of contract, and the amount of two dollars per head is to be deducted from the purchase price of thirteen dollars per head as cattle are delivered.

Said amount of two dollars per head is to be applied on the original payment of thirty-seven hundred and fifty dollars."

It appears that Nebeker had the cattle in charge, and transacted the business for himself and Smith, and there is evidence tending to show that B. F. Stewart subsequently transacted business respecting the cattle for himself and his brother, A. L. Stewart. Nebeker on being interrogated by defendant Harvey informed him that he had sold

his cattle to the Stewart brothers, and afterward, on February 20, 1897, Harvey purchased of the Stewart brothers 2,000 head of cattle, which were to consist of those purhased from Nebeker, and other cattle. Thereafter, on April 24, 1897, Harvey made an indorsement on his contract with the Stewart brothers, as follows:

"I turn this contract to C. J. Anderson and M. B. Huffman on receipt of $7,000.

GEORGE HARVEY.

Have received $20 in currency on the above contract.

4–27/97.   Received of C. J. Anderson check for $2,000 on Omaha.

4–26.   Received check for Huffman and Rollins for $5,000, South Omaha, which consideration I turn this contract.                 GEORGE HARVEY."

It appears that Nebeker was unable to deliver the cattle as rapidly as was expected by the appellants, and thereupon, on June 10, 1897, entered into another contract with B. F. Stewart for the sale of his cattle, in which the cattle were "to be counted as total number, 1,600 head," and the title to them was "to remain in Nebeker until payment in full." This contract, on motion of defendants, was excluded from evidence, but afterward evidence was admitted relating to it. After making this contract, B. F. Stewart informed his brother by letter respecting the transaction, and that he had "bought the cattle on range delivery on a basis of 1,600 head." There is evidence tending to show that B. F. Stewart was acting for himself and brother. After the making of this contract, Nebeker, it appears, informed Harvey, Huffman, and

21 Utah — 24.

Anderson as to its contents, and that title to the cattle remained in him until they were paid for in full. Thereafter they accepted an order from B. F. Stewart conditionally. The order and acceptance are as follows: "Salt Lake City, July 23, 1897. Messrs. Huffman, Anderson, and Harvey: Please pay to Aquila Nebeker $2,197, balance due on cattle. B. F. Stewart. Order accepted when advance money paid by Harvey settled. Huffman, Anderson, and George Harvey."

It appears in evidence that this order was given to pay the balance due on the 1,600 head of cattle delivered to the Stewarts, and which included the 208 head sued for, and that it has never been paid. The cattle were shipped from the town of Milford to Salt Lake City, to be carried beyond the limits of the State. Nebeker, it appears, having failed to receive payment for the balance due him, intercepted them at Salt Lake City, and demanded the possession of the 208 head of cattle. Upon possession being refused, he brought this suit and obtained possession, but upon the defendants' executing a proper bond, the cattle were re-delivered to them. At the trial a verdict was returned in favor of the plaintiffs for the return of the property, and, if that could not be returned, then for the value thereof, which was fixed at $2,200, with interest. Thereupon judgment was entered for the value, and the defendants appealed.

After stating the facts as above, *Bartch, C. J.*, delivered the opinion of the court.

The first question presented is one of jurisdiction. The appellants insist that the action was brought in the wrong county, and that therefore the court had no jurisdiction to try the cause. This question was raised for the first time on motion for a new trial, there having occurred no con-

tention respecting it during the trial. The action is re-
plevin, and it is alleged in the complaint that, on the 12th
of November the cattle were wrongfully taken in Salt Lake
City and County; that on the same day demand was made
for them; and that possession thereof was refused by the
defendants and the cattle unlawfully withheld and detained
from 'the plaintiffs. That, at the time the demand was
made and suit brought, the cattle were in the city and
county of Salt Lake, was substantially admitted in the
answer.

Without referring to the evidence on this point in de-
tail, it may be said that it strongly tends to support the
allegations of the pleadings. The fact that the cattle were
shipped from Milford, Beaver County, is immaterial, be-
cause the complaint states a cause of action in the *detinet*.
It charges that the possession of the cattle was unlawfully
withheld after demand was made in Salt Lake County. It
is true there is some evidence to the effect that the cattle
were taken to the Union Stock Yards, some miles north
of Salt Lake City, which are in Davis County, but whether
the cattle were taken there before or after demand was
made does not distinctly appear. It does, however, clearly
appear that they were in Salt Lake City and County before
they reached Davis County, assuming as a fact, although
not shown by the evidence, that the Union Stock Yards
are in Davis County; and there is direct evidence that
when the demand was made and the refusal given, the
cattle were in Salt Lake City and County. The fact that
some process was served in Davis County, as shown by the
return of the officer, is immaterial, because, in such a case,
the question is not where the property was when process was
served, but where it was when demand for its possession
was made. The cause of action arose when and where
such demand was made and the refusal occurred. This

court so held in *Woodward* v. *Edmunds*, 20 Utah, 118, 57 Pac. Rep., 848.

We are of the opinion that the action was properly brought in Salt Lake County.

Nor does the fact that the complaint contains an allegation of "wrongful taking," furnish a sufficient reason for setting aside a verdict for unlawful detention, when such detention was not only the main issue, but was the *gravamen* of the action, and when the case was tried mainly on that theory, and no objection to the complaint, based on such allegation, was raised by special plea, and the verdict is supported by the evidence. If the complaint was not as definite and certain as it should have been, the remedy was by special plea. It sufficiently states a cause of action in replevin in the *detinet*, to withstand the objections here made to the verdict and judgment, although it contains an allegation which would be proper and material in replevin in the *cepit*. Where, as in this case, the judgment comes within the issue, and the facts show a right of recovery in the plaintiff, the mere fact that language is used in the complaint which technically applies to another form of action, will not, under the circumstances of this case, warrant a reversal of the judgment.

In *Kuhn* v. *McAllister*, 1 Utah, 273, where objection was made to the form of the action, it was said: "Some of the language used may be that used in trover, but some certainly is not, and it matters little under the Practice Act, whether the language used be that belonging to the form of one action or another, or to no form of action. The material question is, Do the facts stated show the plaintiff entitled to any remedy, legal or equitable. If so, then the court could not say that the complaint did not state facts sufficient to constitute a cause of action."

Black on Judgments, Sec. 141; Pomeroy's Code Reme
dies, Sec. 453; *Stevens* v. *Mayor*, etc., of city of New
York, 84 N. Y., 298; *Conaughty* v. *Nichols*, 42 N. Y.,
83; *Hale* v. *Omaha Nat. Bank*, 49 N. Y., 626; *McAl-
lister* v. *Kuhn*, 96 U. S., 87; *Johnson* v. *Meaghr*, 14
Utah, 426.

It is also contended that the verdict against defendants
Harvey and Stewart is not supported by the evidence.
This contention appears to be based on the ground that
the cattle were delivered to Huffman and Anderson before
suit was commenced.   In answer thereto it may be said
that there was no exception taken or error assigned, re-
specting insufficiency of evidence to sustain the verdict
and judgment as to any particular defendant.   The cause
was tried upon the theory that all or none were liable, and
the evidence tends to show that all manifested an interest
in the property and were either directly or indirectly in
possession thereof.   Under the circumstances disclosed
by the record, this point can not avail the appellants.

It is further contended, on behalf of the appellants,
that the court erred in admitting oral evidence respecting
the contract entered into by Nebeker and B. F. Stewart
in June, 1897, after, on objection of the defendants, hav-
ing refused to admit the contract itself in evidence.   The
trouble here is that the court committed error, harmless
as to the appellants, in excluding this contract, for it
seems impossible to perceive any sound reason upon which
this action of the court was based.   The contract referred
to a sale of a number of cattle which included those in
question herein.   The evidence tended to show that the
cattle were delivered in pursuance of its terms, and that
the parties, on both sides of this controversy, had acted
under it.   There was a balance due the plaintiffs for the
cattle delivered in accordance with its terms, for the pay-

ment of which appellant, Stewart, gave an order, and this was accepted by the other appellants, "when advance money paid by Harvey settled." This was the only condition as to the acceptance. It is true the appellants introduced evidence tending to show that the cattle were delivered under another contract, but this did not authorize the exclusion of the contract here under consideration. As the contract was clearly admissible in evidence, and had been improperly excluded, at the instance of the appellants, the court committed no error in afterward admitting evidence showing that such a contract was in fact executed, and tending to show that the property in dispute was delivered in pursuance of that contract, and that the title of that property was to remain in the plaintiffs, until payment in full had been made. Whether the cattle were delivered under the one or the other of the contracts was a question of fact for the jury to determine. The jury determined it adversely to the appellants, and there appears to be ample evidence in the record to sustain the verdict on this point.

The appellants also complain of the action of the court in modifying a certain request to charge, but upon careful examination of the modification of the request, which, as modified, appears in the charge of the court, as paragraph number 16, we perceive no error.

Numerous other errors, relating to the charge of the court, were assigned, but, in the absence of proper exceptions, we can not consider them. The exceptions are too general, simply referring to whole paragraphs of the charge. To be of avail in an appellate court, they must specify the particular objectionable matter, so as to give the trial judge an opportunity to make a correction, notwithstanding that it is provided in Section 3151, R. S., that "no reason need be given for such exceptions."

That section does not authorize the making of wholesale exceptions without reference to the specific matter which is claimed to be objectionable. The reason of the rule which requires the specific objectionable matter to be pointed out in the presence of the jury is obvious. If the objection to such matter be well taken, the court may then make the correction called for, and thus not only save the expense of another trial but also the time of the court. The rule has been firmly established in this State. *Pool* v. *Southern Pac. Co.*, 20 Utah, 210; 58 Pac. Rep., 326, 333; *Brigham City* v. *Crawford*, 20 Utah, 130; 57 Pac. Rep., 842; *Wilson* v. *Sioux Con. Min. Co.*, 16 Utah, 91, 99; *People* v. *Hart*, 10 Utah, 204; *Lowe* v. *Salt Lake City*, 13 Utah, 91, 99.

We do not deem it necessary or important to discuss any of the other questions presented. There appears to be no reversible error in the record.

The judgment is affirmed, with costs.

MINER, J., concurs in the result.

BASKIN, J., concurs.