Whipple v. Preece et al.

---

EDWARD WHIPPLE, Appellant, v. WILLIAM PREECE, JOSEPH TOLLIVER, LESLIE ASHTON, LYCURGUS JOHNSON, J. W. JOHNSON, A. N. JOHNSON, and SNELLAN JOHNSON, Respondents.

No. 1316.   (67 Pac. 1072.)

1.  **Appeal: Bill of Exceptions: Redundant Matter: Must be Brief as Possible.**
    A bill of exceptions from which redundant and useless matter is not eliminated does not conform to Revised Statutes, section 3286, providing that the judge in settling a bill of exceptions must strike out all redundant and useless matter so that the exceptions may be presented as briefly as possible.[1]

2.  **Action for Conversion: Title to Property: Scope of Cross Examination: Fraud: Discretion of Trial Court.**
    In an action for the conversion of property sold under execution against plaintiff and another, wherein plaintiff alleged sole

---

[1] Wild v. Railroad Co., 23 Utah 265; 63 Pac. 886.

ownership in himself, and defendant denied such ownership, alleging that the other execution debtor had an interest therein, plaintiff having testified that he was sole owner of the property and rightfully in possession thereof, the extent of his cross-examination for the purpose of showing that his ownership and possession were fraudulent was largely in the discretion of the trial court, with which, in the absence of anything to show that plaintiff's rights were manifestly prejudiced, the appellate court will not interfere.[2]

3. **General Exceptions to Instructions: When Considered.**

A general exception to instructions, merely referring thereto, or to paragraphs thereof, by number, without specifying the particular matter deemed objectionable, can not be considered if any portion of the instruction or paragraph objected to be correct.[3]

4. **Jurors: Venire: Service by Sheriff when Party to Suit: Under Facts Stated Reversal not Justified.**

Revised Statutes, section 3140, provides that a challenge to the jury panel can be founded only on a material departure from the forms prescribed for drawing and return of the jury, or for intentional omission of the officer to summon any of the jurors drawn; and section 597 provides that, where the sheriff is a party, the clerk shall direct the jury process to a constable. *Held*, in such case, that, in view of secs. 1306, 1307, 1309, 1310, 1311, 1315, 1316, showing that the sheriff has nothing to do with the selection and drawing of jurors, but is only required to summon them in the manner prescribed, it appearing that the jury were not drawn or served specially for that case, but were summoned for the term, it not being claimed that they were unfair or biased, and it further appearing that the verdict was the legitimate result of the evidence, and that, if the judgment were reversed, plaintiff could or ought ultimately to recover, a

[2]Cahoon v West, 20 Utah 73, 57 Pac. 715; Brigham City v. Crawford, 20 Utah 130, 57 Pac. 842.

[3]Haun v. Railway Co., 22 Utah 346; 62 Pac. 908; Brigham City v. Crawford, 20 Utah 130; 57 Pac. 842; Pool v. Pacific Co., 20 Utah 210; 58 Pac. 326; Wall v. Smelting Co., 20 Utah 474; 59 Pac. 399; Scott v. Milling Co., 18 Utah 486; 56 Pac. 305; Wilson v. Mining Co., 16 Utah 392; 52 Pac. 626; Culmer v. Clift, 14 Utah 286; 47 Pac. 85; Lowe v. Salt Lake City, 13 Utah 91; 44 Pac. 1050; 57 Am. St. Rep. 708; Farr v. Swigart, 13 Utah 150, 44 Pac. 711; People v. Berlin, 10 Utah 39, 41, 36 Pac. 199; Nebeker v. Harvey, 21 Utah 363; 60 Pac. 1029.

reversal for the denial of defendant's challenge to the panel on the sole ground that the sheriff served the venire, it not even being claimed that he exercised partiality in such service, would not be justified.

(Decided March 8, 1902.)

Appeal from the Fourth District Court, Uintah County.— *Hon. J. E. Booth,* Judge.

Action to recover damages for the conversion of certain property alleged to be of the value of $6,000. From a judgment in favor of the defendants, the plaintiff appealed.

AFFIRMED.

*E. A. Walton, Esq,* and *Messrs. Powers, Straup & Lippman* for appellant.

When the jury appeared defendant challenged the panel because summoned by Sheriff William Preece, one of the defendants in the case. We insist that it is not competent for a party to an action to have anything to do with the making up of the tribunal who shall decide the case. Such a practice is not in accordance with the common law and the practice of this State; neither is it in conformity with American ideas of propriety. When the sheriff is a party to an action, process shall issue to and be served by a constable. Revised Statutes 1898, sec. 597.

In California, where there was similar legislation (Cal. Political Code, 4191-2) to the effect that a person other than the sheriff should serve process in such cases, the court says, "The sheriff being the party interested there was an obvious propriety, if the plaintiff insisted on it, in trying the case by a jury in the selection of which he had no agency." Pocher v. Hunsacker, 14 Cal. 120.

In Woods v. Rowan, 5 Johnson's Rep. 133, the array was challenged because the venire had been served by the plaintiff, he being the sheriff. The court says, that "notwithstanding the sheriff does not select the jury, but can summon only those persons previously balloted by the clerk, yet he is disqualified. The challenge was well taken."

Section 597, Revised Statutes, above cited, is in substance identical with section 350, Code of Iowa 1873. In Minott v. Vineyard, 11 Iowa 91, this provision was construed to disqualify a deputy sheriff to serve a writ issued against his principal.

In Gollobitsch v. Rainbow, 84 Iowa 567, it was construed to disqualify a deputy sheriff from impaneling a jury in a case where the sheriff was a party. To the same effect are Cranmer v. Crawley, 1 N. J. L. 43; Munshower v. Patton, 10 Serg. & R. 334.

The practice obtaining in this case has been well characterized by Judge Thompson as "an unseemly spectacle and one calculated to impair public confidence in the administration of justice." Thompson & Merriam on Juries, sec. 132.

The American rule of cross-examination as established by the Supreme Court of the United States and most of the State courts is: The cross-examination of a witness is limited to an inquiry as to the facts and circumstances connected with the matters stated in his direct examination and applies to parties as well as to other witnesses. Underhill Ev., p. 481; 1 Wharton Ev., sec. 529; 3 Jones Ev., sec. 445; Abbott's Civil Trial Brief (2 Ed.), 160; Wills v. Russell, 100 U. S. 621; Elbuaker v. Buckley, 16 Serg. & R. 77; Floyd v. Bovard, 6 Watts & S. 75; Bell v. Prewitt, 62 Ill. 362; Phila. R. R. Co. v. Stimpson, 14 Pa. 448; Aitken v. Mendenhall, 25 Cal. 212; People v. Miller, 33 Cal. 99; 1 Thompson on Trials, sec. 437; McFadden v. Mitchell, 61 Cal. 148.

This well-established rule was persistently violated and

defendants were allowed to cross-examine with respect to matters involved in their affirmative defense.

*Messrs. King, Burton & King* for respondents.

The first point raised in the motion to dismiss the appeal is that the bill of exceptions filed does not comply with the provisions of sections 3384 and 3286 of the Revised Statutes of Utah, 1898.

This question has heretofore been presented to this court in the recent case of Wild v. Union Pacific R. R. Co., 23 Utah 265, 63 Pac. 886. In this case the court observed: "The bill of exceptions contains 608 pages of typewritten matter, and consists of the reporter's notes, the questions asked the witnesses and their answers, side-bar conversations and remarks of the judge and counsel which occurred during the trial. . . . . Such a bill does not conform to the requirements of sections 3284 of the Revised Statutes 1898. People v. Getty, 49 Cal. 581; Caldwell v. Parks, 50 Cal. 502. . . . . Under the precedent of Caldwell v. Parks, supra, we would be justified in affirming the judgment without regard to the bill of exceptions, and will do so in all cases hereafter appealed, unless some fatal error which is not required to be shown by the bill of exceptions appears upon the face of the record."

The general rule of cross-examination is undoubtedly as counsel contend, but this rule has its exceptions. The cases cited by counsel in the main uphold the general rule, but are inapplicable to the questions involved in this case, while the text-books quoted sustain our position.

Mr. Wharton presents one of the exceptions as follows: "There are other cases in which when fraud or mistake is probable though not proved, it is proper to give counsel great latitude, as that the fraud or mistake if there be such should be tracked. . . . In view of these considerations, courts of review are unwilling except in extreme cases to reverse the rule

as to the limits in the concrete of a cross-examination."
Wharton's Evidence, sec. 528; Thornton v. Hook, 36 Cal.
223; Harper v. Lamping, 33 Cal. 646; Jackson v. Fether
River W. Co., 14 Cal. 22; Jacobsen v. Metzger, 35 Mich. 103;
Jennings v. Prentice, 39 Mich. 422; Anderson v. Walter, 34
Mich. 114; Kalk v. Fielding, 7 N. W. (Wis.) 188.

Assignments numbered from 66 to 80, inclusive, are dis-
cussed, but the argument is wasted, as there is not a single
exception to the charge of the court, that is available for any
purpose whatever. In view of the uniform and numerous
decisions of this court holding that exceptions of this general
character will not be considered, we deem the discussion of
the alleged errors attempted to be assigned unnecessary. In
the case of Scott v. Mining Co., 18 Utah 492, the exception
was as follows: "The defendant duly excepts to that part of
the charge containing plaintiff's request No. 2," almost iden-
tical in form with the exception taken in the case at bar, and
the court refused to consider it. Mark v. Tompkins, 7 Utah
425; People v. Berlin, 10 Utah 41; Lowe v. Salt Lake City,
13 Utah 99; Wilson v. Sioux Con. M. Co., 16 Utah 398.

BARTCH, J.—This action was brought to recover dam-
ages for the conversion of certain property alleged to be of
the value of $6,000. The complaint, in substance, charges
that the defendants unlawfully and maliciously took and car-
ried away the property, and converted it to their own use.
After denying this, the answer avers that the defendant
Preece was the sheriff of Uintah county, where the transac-
tion occurred; that defendants Tolliver and Ashton were his
deputies; that as such officers they seized and sold the prop-
erty under and by virtue of executions issued out of the dis-
trict court to satisfy valid and subsisting judgments against
the owners and in favor of the Johnsons, the other defend-
ants; and that the plaintiff and one Asenath Chadwick were

24 Utah—24

the judgment debtors, and owners of the property in question. From the evidence it appears that defendants Johnson had a judgment against the plaintiff for the amount of $291.18, and one against Asenath Chadwick for $2,694,21. The judgments and the executions issued thereon were in the usual form. Under these executions the sheriff sold the property in controversy, consisting of horses and other personal property, and made his returns. It appears that in 1895 Asenath Chadwick and the plaintiff formed a partnership, which continued at least until the time of the commencement of the suits resulting in the judgments—some of the evidence tending to show that it continued longer—and that the property in dispute was the property of the partnership. The plaintiff, however, introduced evidence for the purpose of showing a purchase by him of the entire interest in the property prior to the issuance of the executions, and the defendants introduced evidence strongly tending to show that, if such purchase was made, it was fraudulent and void as to creditors, that the property at the time of sale still belonged to the partnership, and that each partner had an interest in it. The property, it seems, was exposed to sale under each execution, and the interest therein of each judgment debtor sold. Some horses belonging to other parties were also sold, but as to them the defendants made settlement. At the trial the jury returned a verdict, "No cause of action," against the plaintiff, who thereupon appealed.

Counsel for the respondents have challenged the standing of the appellant in this court by a motion to dismiss the appeal on the ground, among other things, that the bill of exceptions does not comply with the provisions of section 3286, Revised Statutes 1898. The same question here presented was before this court in the case of Wild v. Railroad Co., 23 Utah 265, 63 Pac. 886, and it was there held that a bill of exceptions like the one at bar, in which "redundant and useless matter" is not eliminated, does not

conform to the statute.  Since, however, this bill was pre-
pared and settled before that decision was made, and from
the view we take of this cause, we have concluded to deny
respondent's motion, and decide the case upon its merits.

The appellant has assigned very numerous errors, but
upon examination most of them are found to be absolutely
without merit, and require no special reference.  The assign-
ments from 3 to 18, inclusive, relate to the cross-examination
of the plaintiff respecting the ownership of the property
which was exposed to sale under the executions.  The
plaintiff alleged ownership in himself of all the property
in dispute, and the defendants denied such ownership, and
claimed and averred that Asenath Chadwick had an interest
in the property.  This raised the material issue in the case,
because, if the plaintiff was the sole owner, then the seizure
and sale of any interest in it under the judgment and execu-
tions against Asenath Chadwick was unwarranted and unlaw-
ful, however regular and fair upon its face the execution
might have been.  When, therefore, the plaintiff went upon
the stand, and testified that the property belonged to him,
that he was the sole owner, and was rightfully in possession
thereof, the defendant had the right, upon cross-examination,
to inquire into the whole transaction through which the plain-
tiff claimed to be such owner and hold the possession, and to
show, if possible, that his claim of sole ownership was in fact
founded in fraud and unwarranted.  In such cases the extent
of cross-examination is largely within the discretion of the
trial court, and courts of review are not inclined, except in
extreme cases, to interfere with such discretion.  In 1 Whart.
Ev., sec. 528, it is said:  "There are cases in which, even in
jurisdictions in which a party is ordinarily precluded from
cross-examination as to new matter, it is essential to justice
that new matter should be introduced on cross-examination.
There are other cases in which, when fraud or mistake is
probable, though not proved, it is proper to give counsel great

latitude, so that the fraud or mistake, if there be such, should be tracked. Much, also, depends upon the attitude of the witness; much on that of the cross-examining counsel. In view of these considerations, courts of review are unwilling, except in extreme cases, to reverse a ruling as to the limits in the concrete of a cross-examination." This court, in Cahoon v. West, 20 Utah 73, 57 Pac. 715, said: "In the case at bar the good faith of the transaction, in which the witness was the principal actor, was directly involved, and therefore a wide range ought to have been permitted on cross-examination." So, in this case, the bona fides of the transaction through which the witness claimed to be the sole owner of the property in controversy was involved, and therefore a wide range on cross-examination was permissible. In Jacobson v. Metzger, 35 Mich. 103, it was held that on cross-examination of a witness who had given evidence making out a prima facie case for the plaintiff it was competent to permit the defendant to draw out any facts which would tend to destroy the case thus made out. 1 Rice, Ev., p. 586; 3 Jones, Ev., sec. 826; New York Iron Mine v. First Nat. Bank of Negaunee, 39 Mich. 644; Wallace v Wallace (Iowa), 17 N. W. 905; Thornton v. Hook, 36 Cal. 223; Brigham City v. Crawford, 20 Utah 130, 57 Pac. 842; Harper v. Lamping, 33 Cal. 641; Jackson v. Water Co., 14 Cal. 19; Jennings v. Prentice, 39 Mich. 421. We are of the opinion that the cross-examination complained of was not prejudicial to the rights of the plaintiff, and that its permission did not constitute an abuse of discretion on the part of the court. Nor do we think the court committed reversible error in any of its other rulings respecting the admission and exclusion of the evidence, referred to by various assignments of error.

The appellant also complains of the charge of the court to the jury, and has made numerous assignments of error in relation thereto. In each instance, however, the exception is general, simply referring to the instruction or para-

graph by number, without any specification of the particular matter deemed objectionable. That such an exception, where any portion of the instruction is correct, can not be considered by us, is no longer an open question in this State. In Nebeker v. Harvey, 21 Utah 363, 375, 60 Pac. 1029, it was said: "Numerous other errors, relating to the charge of the court, were assigned, but, in the absence of proper exceptions, we can not consider them. The exceptions are too general, simply referring to whole paragraphs of the charge. To be of avail in an appellate court, they must specify the particular objectionable matter, so as to give the trial judge an opportunity to make a correction, notwithstanding that it is provided in section 3151, Revised Statutes 1898, that 'no reason need be given for such exceptions.' That section does not authorize the making of wholesale exceptions without reference to the specific matter which is claimed to be objectionable. The reason of the rule which requires the specific objectionable matter to be pointed out in the presence of the jury is obvious. If the objection to such matter be well taken, the court may then make the correction called for, and thus not only save the expense of another trial, but also the time of the court. The rule has been firmly established in this State." Haun v. Railway Co., 22 Utah 346, 62 Pac. 908; Brigham City v. Crawford, 20 Utah 130, 57 Pac. 842; Pool v. Pacific Co., 20 Utah 210, 58 Pac. 326; Wall v. Smelting Co., 20 Utah 474, 59 Pac. 399; Scott v. Milling Co., 18 Utah 486, 56 Pac. 305; Wilson v. Mining Co., 16 Utah 392, 52 Pac. 626; Culmer v. Clift, 14 Utah 286, 47 Pac. 85; Lowe v. Salt Lake City, 13 Utah 91, 44 Pac. 1050, 57 Am. St. Rep. 708; Farr v. Swigart, 13 Utah 150, 44 Pac. 711; People v. Berlin, 10 Utah 39, 41, 36 Pac. 199; Nebeker v. Harvey, 21 Utah 363, 60 Pac. 1029. Nor, as appears from the record, did the court commit prejudicial error in refusing to submit the requests of the plaintiff to the jury.

The appellant also contends that the court erred in deny-

ing his challenge to the panel when the jury was called. The challenge was based on the ground that the sheriff, one of the defendants, summoned the jurors. Section 3140, Revised Statutes 1898, provides: "A challenge to the panel can be founded only on a material departure from the forms prescribed in respect to the drawing and return of the jury, or on the intentional omission of the proper officer to summon one or more of the jurors drawn." Under section 1302 it is provided that "prior to December first of each calendar year" the judge or judges of the district court of each county shall appoint two persons, voters of the county, as jury commissioners. These commissioners shall, under section 1306, "before the fifteenth day of December, after their appointment," select from the names of the legal voters "a written list of names from which grand and petit jurors shall be drawn" to serve during the succeeding year, which list, according to section 1307, the commissioners must, immediately after its preparation, certify, and file in the office of the clerk of the district court. Section 1309 then imposes upon the clerk the duty to write down the names contained in the list on separate pieces of paper and deposit them in the "jury box." Section 1310 provides that "at least fifteen days before any term of the court at which a petit jury shall be required" the county clerk where the court is to be held shall draw from the jury box such number of names as the judge may direct, and that at least three days before the drawing of such jurors the clerk shall notify the county attorney and county treasurer as to where such drawing shall take place. It is then made the duty of such officers to be present at the clerk's office and witness the drawing. In section 1311 it is, inter alia, provided: "Separate lists of the names of the persons so drawn for petit jurors and for grand jurors, with their places of residence, shall be made and certified by the clerk and attending officers, and delivered to the sheriff of the county. The clerk of the court shall issue a venire to the

sheriff or his deputy directing him to summon the person so drawn." Section 1315 provides: "It shall be the duty of the clerk when issuing any venire for jurors to ascertain, whenever practicable, and insert therein, their post office addresses; and when the venire shall have been received for service by the sheriff, if the time is sufficient for service by mail, he shall address to each person summoned, whose post-office address shall have been given or can be promptly ascertained, a notice requiring such person to be and appear at the time and place for the purpose mentioned in the venire. The sheriff shall sign the notice officially, and shall register and mail it, postage and registry fee prepaid, to the person summoned, at his postoffice address, with a request indorsed on the envelope in the usual form for the return of the letter to the sender, if not delivered within five days. The receipt of such registered letter by the person to whom it is addressed shall be deemed valid service upon him of the venire, and the returned registry receipt signed by such person or by any person in his behalf, shall be taken as prima facie evidence of service, and the sheriff shall make return accordingly." Section 1316 reads: "If the time is insufficient for service of the notice by. mail or if having been sent it shall be returned through the mail undelivered, the sheriff may make or cause to be made personal service of the venire." In section 1322 it is provided: "The officer summoning such jurors must, at or before the time fixed for their appearance, return the order to the court, with a list of the persons summoned indorsed thereon." Section 597 provides: "In cases where it appears from the papers of any court of record that the sheriff is a party, or where an affidavit is filed with the clerk of the court stating a partiality, prejudice, consanguinity, or interest on the part of the sheriff, the clerk of the court shall direct process to any constable of the county, whose duty it. shall be to execute it in the same manner as if he were sheriff." Such are the several statutory provisions relating

to the question under consideration. From an examination of them it will be noticed that the sheriff has nothing whatever to do with the selection of the names of persons to serve as jurors, nor with the preparation of the list of names of such persons. Nor has he anything to do with the selection or drawing of jurors to serve at any particular term of court. He is not even to be present to witness the selection of names or the drawing of jurors. His simple duty is to summon the jurors in the manner provided by the statute, whenever the list of the names of the persons selected and drawn has been properly prepared, certified by the "clerk and attending officers," and delivered to him. But, notwithstanding this, the sheriff, where he is a party to a suit to be tried in the court where the jurors are to serve, is not the proper party to serve the venire. In such case the clerk of the court, by virtue of section 597, above quoted, should direct process to a constable of the county in which the court is held. The question in the case at bar, therefore, is whether, under the circumstances, the court committed prejudicial error in denying the challenge because of the fact that the sheriff, who was a party to this suit, served the venire. This is the only irregularity of which complaint is made. In all other respects the venire appears to have been prepared and served in accordance with the forms of law. Whether the service of the jurors was made by registered letter through the mail or in person does not appear from the record. It is shown, however, that all the jurors named in the venire, except one, were served, and, it seems, the plaintiff admits that the fact of this omission to serve one juror, who was absent at the time, is not material. The jurors had been summoned for the term, and were not drawn or served specially for this case. There is nothing to show, nor is it claimed, that the sheriff exercised partiality in making the service. Nor is it claimed that any of the jurors were unfair or biased in the consideration of the case. It is shown that when the cause was called

neither of the parties to the suit wanted a jury trial.    Both sides expressly waived the jury, but the court declined to hear the case without one, and thereupon the plaintiff interposed his challenge.    The verdict appears to be the legitimate result of the evidence.    The testimony is not such as to indicate that, if the judgment were reversed, the plaintiff could or ought ultimately to recover.    Under all the facts and circumstances of this case, viewed in the light of the provisions of the statute quoted and referred to, we are of the opinion that a reversal because of the irregularity complained of would not be justified.    Railroad Co. v. Frazier, 25 Neb. 42, 40 N. W. 604; Prince v. State, 3 Stew. & P. 253.

We find no reversible error in the record.    The judgment is affirmed, with costs.

MINER, C. J., and BASKIN, J., concur.