# PHILIP T. COOK, RESPONDENT, *v.* BULLION-BECK AND CHAMPION MINING COMPANY, APPELLANT.[1]

MASTER AND SERVANT.—NEGLIGENCE.—CONTRIBUTORY NEGLIGENCE.
—EVIDENCE.—In an action against the defendant mining company for personal injuries, it appeared that there was a walk in the "Daisy Stope," made several years before the accident occurred, resting on timbers and made in the usual way; that the planks and other timber in the mine become affected with what is known as "dry rot," caused by the foul air; that the plank which broke and precipitated the plaintiff and caused the injury, was rotten and covered with mold, which facts were known to the plaintiff; that after having used such walks in stopes, it was not customary to repair them; that plaintiff was an experienced timber man and knew that the planks were moldy; that he undertook to walk across the planks when he could have reached the point he desired by another route without any risk or danger to himself; and that there were plenty of new planks to be had by him by asking for them, and that he knew as much about the condition of the planks as any of the employés about the mine. *Held*, that plaintiff's own negligence and carelessness contributed to his injury, and therefore he cannot recover.

(No. 589. Decided Aug. 31, 1895. 41 P. R. 557.)

APPEAL from the District Court of the First Judicial District. Hon. H. W. Smith, *Judge.*

Action by Philip T. Cook against the Bullion-Beck & Champion Mining Company for personal injuries caused by defendant's negligence. From a judgment for plaintiff, defendant appeals. *Reversed.*

*Messrs. Rawlins & Critchlow,* for appellant.

[1] Petition for a rehearing denied Dec. 9, 1895.

*Mr. N. A. Robertson* and *Messrs. Bennett, Marshall & Bradley*, for respondent.

Does the evidence disclose any negligence on the part of the company? Was Cook guilty of contributory negligence? These are the questions, and they were decided by the jury, and their decision is final and cannot be reviewed by this court. "In this case there was evidence from which negligence on the part of the defendant might be inferred. At least, there was sufficient to submit to the jury." The foregoing is quoted from two cases reported in 4 Utah, one, *Cunningham* v. *U. P. Ry. Co.*, at p. 206; the other, that of Trihay, at p. 480, and applies to the case at bar equally as to those referred to. It is further said in the former case and adopted in the latter: "Under our system of jurisprudence it is the province of the jury to pass upon the facts." "It is not only their privilege but their right, to judge of the sufficiency of the evidence introduced, to establish any one or more facts in the case on trial." And it is only "When there is a total defect of evidence as to any essential fact, or a spark—a 'scintilla,' as it is termed—the case should be withdrawn from the consideration of the jury." But to come back to our own side of the case: We wish to again call attention to the fact that the jury in this case, after a fair trial, and upon full and fair instructions, without an error in law, has found that the defendant was negligent and the plaintiff did not contribute by his own negligence to the injury, and that "Under our system of jurisprudence it is the province of the jury to pass upon the facts." And that decision of the facts is final and cannot be reviewed by the Supreme Court, unless there is a total defect of evidence as to the negligence alleged in the complaint or the absence of a mere spark or scintilla. It is also said in the case of *Wedgewood* v. *The Chicago &*

*Northwestern Ry. Co.*, reported in 44 Wis. at p. 44, quoting from p. 47: "Of course, it was not the province of the circuit court, any more than it is of this court to pass upon the weight or effect of this testimony, but only to determine whether there was any negligence on the part of the defendant, which should be submitted to the jury." In the same case it was held to be the law, quoting from pp. 48, 49, that in a case where "It does not appear that plaintiff had any special charge of the car, except what is implied from his service as brakeman, or that he was intrusted with any duty of *inspecting it.*" * * * "The company was under obligation to use reasonable means to guard against defects in its cars. It was bound to exercise reasonable diligence in watching its cars, inspecting them; and keeping them in repair. This duty it owed its employés. The danger they incurred in entering its service was not to be increased by neglect or failure to perform this legal duty." The ruling in this case is followed by all Wisconsin cases where the point is involved. See 45 Wis. 480; 47 Wis. 606.

Where an employé contracts to perform for extra compensation hazardous service, he only contracts to take upon himself the risks incident to that employment, and not risks growing out of negligence of the employer. *Trihay* v. *Mining Co.*, 4 Utah, 469. In the above case the evidence showed that plaintiff was injured by falling scale while timbering a fresh stope, and tended to show that the ground needed immediate timbering, as the stope was broken, to keep it safe, and it was held sufficient evidence to sustain a verdict. See, also, *Cunningham* v. *Coal Co.*, 4 Utah, 206. If facts exist, known to the employer and unknown to the employé, increasing the risks of a miner beyond the ordinary hazards, the employer is bound to disclose such facts to his employés, otherwise he is liable for negligence in case of injury to the latter resulting

from such unusual risks. *Strachndorf* v. *Rosenthal,* 30 Wis. 674 (10 Morrison, 676). Employer is not an insurer of safety, but bound to diligence. *Canter* v. *Colorady M. Co.,* 15 Morrison, 559; *Quincy Coal Co.* v. *Hood,* 12 Morrison, 128; *Peery* v. *Rickets,* 55 Ill. 234, 9 Morrison, 687; *Kielly* v. *Belcher Co.,* 3 Sawyer, 437, 10 Morrison, 3. As to the responsibilities of owners for condition of premises and invitation, see: Bushwell on Law of Personal Injuries, § 66; *Bennett* v. *R. R. Co.,* 102 U. S. 577; *Ryan* v. *Fowler,* 24 N. Y. 410; *Appeal of Standard Mfg. Co.,* 18 Alt. Rep. 637; Bus. on Per. Inj., § 194, p. 318; *Behm* v. *Ormond,* 58 Wis. 1; *C. & A. R. R. Co.* v. *Shannon,* 43 Ill. 338; *Schooner Norway* v. *Jensen,* 52 Ill. 373; *Ill. C. R. R. Co.* v. *Welch,* 52 Ill. 183; *Pantzar* v. *Tilly Foster M. Co.,* 99 N. Y. 368.

MERRITT, C. J.:

The complaint in this action alleges: That on and prior to March 6, 1894, plaintiff was in the employ of defendant, at its mines in Eureka, and that, prior to said time, defendant had constructed on and across certain timbers in the Daisy stope a certain walk, for the use of the employés of defendant, of several planks, laid end to end across said timbers and through the stope. That the walk was negligently and carelessly constructed in part, and of materials that were defective and in an unsafe and dangerous condition, and unfit for the purpose, and known to the defendant at the time to be so; and defendant negligently and carelessly permitted and allowed part of the materials entering into the construction of the said walk to become defective, unsafe, and dangerous, and to remain in such condition, knowing that they were becoming and were in such condition, and that they were so unsafe, defective, and dangerous on the day of March 6, 1894. That plaintiff, while in said employ, and while discharging

the duties of his employment, and while using due care and caution for his safety, and without any negligence on his part, stepped upon and passed along said walk, and did not then, or prior thereto, know of, nor could he discover by the exercise of reasonable diligence, the defective or unsafe condition of said walk, or the materials of which same was constructed; and one of the unsafe and defective planks constituting said walk then and thereupon broke, and precipitated plaintiff downward 36 feet, whereby he sustained a fracture of one of the bones of the right leg, and sprains of the ankle and knee and shoulder, and bruised and injured his ribs, spine, and back, and sustained other injuries and wounds, internal and external, and was thereby caused physical pain and suffering, and was permanently hurt and injured, to his damage in the sum of $15,000, in addition to the sum of $150 paid for medicine and medical attendance.

The answer denied that at the time mentioned in the complaint, or at any other time, it was the duty of defendant to provide or keep for the use of plaintiff a safe or suitable plank or walk, in good condition or repair, at the place mentioned in the complaint of plaintiff; and denied that defendant negligently or carelessly constructed at the place mentioned in the complaint a walk, or constructed the same out of defective materials, or that the materials were unsafe or dangerous, or unfit for the purpose, or that defendant negligently or carelessly, or at all, permitted or allowed any part of the materials entering into the construction of the said walk to be or to become defective or unsafe or dangerous, or to remain in a defective, unsafe, or dangerous condition, or knew that the same was becoming or remaining in a dangerous, defective, or unsafe condition; and denied that at the time or place mentioned in the complaint, or at all, it was the duty of the defendant to construct or maintain a walk

for the benefit of plaintiff, or for any other purpose, or that it was the duty of defendant to keep same in repair, or in a safe condition; and denied that the plaintiff was precipitated through the timbers of the mine while using due or any care or caution for his safety, or that it happened without negligence on the part of plaintiff; denied that plaintiff was unaware of, or could not discover by the exercise of reasonable diligence, the condition of the walk or plank, or the condition of the material of which it was constructed; denied that the injuries or wounds were sustained in the manner set forth in the complaint, or by reason of any negligence on the part of defendant; and denied that he was caused, or has endured, any physical or mental pain or suffering, or was permanently hurt or injured, or damaged in the sum of $15,000, or any other sum whatever; and denied that he was compelled to pay, or has paid, $150, or any other sum, for medicine or medical attendance. And for a further answer the defendant alleged that at the time mentioned in the complaint the plaintiff was in the employ of defendant as a timberman in its mine, and that, at and prior to the time mentioned in the complaint, defendant was engaged in repairing an unused portion of the mine, and that in the course of said employment it became and was the duty of the plaintiff to pass through the place mentioned in the complaint, which place or stope was then, and for a long time prior thereto had been unused and abandoned; that plaintiff well knew the character of the said stope, and the timbers therein, and that the same were or might be unsafe, and that the plaintiff, while exercising no care or caution for his own safety, negligently and carelessly used the walk complained of; and that the accident to the plaintiff was occasioned solely by the want of due care and caution on the part of plaintiff, and not on account of any failure, negligence, or carelessness on the part of defendant.

A jury was impaneled in the cause November 16, 1895, and a verdict in favor of plaintiff, and against the defendant, was rendered, assessing the plaintiff's damages at $3,000. The defendant's notice of intention to move for a new trial was duly filed, and specified the following grounds: (1) Insufficiency of evidence to justify the verdict, and that same was against law. (2) Errors in law occurring at the trial, and excepted to by defendant; giving notice that same would be made upon a statement of the case to be prepared and served. An order overruling defendant's motion for a new trial was made and entered on the 3d day of April, 1895, and an appeal has been taken from the judgment and order overruling the motion for a new trial. This appeal is taken upon the sole ground that the evidence is insufficient to justify the verdict, and it is alleged to be insufficient for two reasons: First, because no negligence is shown on the part of the appellant, the employer, in respect to the place where the injury occurred; and, second, because, whether negligence can be attributed to appellant, or not, the injury was the result solely of the foolhardiness and recklessness of the respondent.

The appellant is a corporation engaged in operating a mine at Eureka, Utah. Its operations are extensive, and had been carried on for a number of years prior to the accident in March, 1894. The accident to the respondent occurred in what is known as the "Daisy Stope,"—a large opening in the mine, from which rock and ore had been extracted, extending from about the 200-foot level downward below the 700-foot level, a distance of some 500 feet or more. It is of varying width, and is filled with what is known as "square sets;" being large, upright timbers, six feet in height, surmounted by caps six inches square. This is the ordinary and familiar mode of timbering large openings in mines. It serves the double purpose of a stay,

upon which the miners work upward in extracting ore, and of supporting the ground and preventing disastrous caves afterwards. And after the ore has been extracted at a given point the planks which cover the square sets, called the "floor" of the set, upon which the ore is dropped and sorted, are removed to the next set above, or wherever else they are needed, and thereafter the timbers remain for lateral and vertical support to the walls of the stope. They need no supervision or repair, except at times when, on account of decay or extraordinary pressure, they begin to give way, when, if desirable to prevent a cave, they are reinforced by new timbers. In this, as in all mines, the bad air causes the timbers to be affected by what is known as "dry rot." The life and strength of the timber are killed; a white mold forms; and in the course of a very few years they become dangerous to walk upon, and liable to give way. This was the case in the Daisy stope, in the vicinity of the 600-foot level, and the condition was not only apparent, on account of the mold on the planks and timbers, but they had begun to give way; and the respondent had, not long prior to the accident, been employed in reinforcing the sets with new timbers, so as to secure the level.

Respondent was a timberman, and was directed on the day of the accident to go to the Daisy stope, at the place where it is intersected by the 600-foot level, and lag up the timbers; that is, fill in behind the square sets with plank and lagging, so as to keep the dirt from falling down to the level. He worked at this half a day. In the afternoon, having lagged up as high as they could reach from the level, the respondent and his companions started up from the level to a point in the stope among the square sets, which they desired to reach to continue the work. In order to do this, they ascended a ladder which extended, from a point further on in the level, up

through the stope, to the 500-foot level. This was a common passageway, often used by miners and others in going from one level to the other; and it was, so far as the evidence shows, in good repair. When they reached a point about 30 or 35 feet above the 600-foot level, they left the ladderway, and started north through the square sets to reach the point where they wished to make fast a pulley to haul up the lagging from the level. To reach the place by the route which they had selected, it was necessary to cross four of these square sets. Over these, planks had been left. Respondent, instead of crossing on the caps of the sets, as he might have done, attempted to walk on the rotten, molded planks; and one of them, being more rotten and unsound than the three which he had already crossed, broke short off, precipitating him a distance of some 20 feet, by means of which he sustained the injuries complained of. All of these timbers were rotten. They were moldy, and known to be so by the plaintiff. The planks which had been used at one time to work and walk on had lain there for years. It was not a passageway or gangway. The planks did not lead from the level or ladderway to any point where miners or others were expected to go. There was absolutely no invitation extended by appellant, either to the respondent or any other person who might be in that part of the mine, to make use of the plank. In the usual and ordinary course of mining in this and in other mines, the planks are left just as the timbers are left to decay when the ore is worked out. The respondent, according to his own testimony, knew as much about the place as any other representative of the appellant. Being a timberman, accustomed to go into dangerous places and repair and make secure rotten timbers, he, of all others, would be expected to know how to avoid danger, and there would be no necessity of warning him.

But, as we have said, he had actual knowledge of the unsafe condition of the timbers.

The law is that the employer is bound to furnish a reasonably safe place for the employé to work in, and must furnish such information as to dangers latent, or not apparent, as may reasonably put the employé on his guard. Where the locality or the appliance is dangerous, and the means of knowledge are equally within the knowledge of the servant and the employer, the latter is not obliged to take any greater care of the former than he (the servant) does of himself. Even though it should be held that the company was negligent in not notifying plaintiff, or sending some one with him to warn him of the condition of the plank which broke; the evidence shows that the accident occurred through the negligence and rashness of the plaintiff himself, directly contributing to the injury. Plaintiff, as we have pointed out, had all the knowledge which any one could have as to the general condition of the timbers in that stope, and of the probable rottenness or soundness of the planks by which he attempted to cross. He says in his testimony: "I went up the ladderway to the sixth sets above the 600-foot level, and went back north from the ladderway to the place where we were lagging; and there was a plank and a gangway left running from the ladderway to where I wanted to go. I started through there, over the set. I tried the plank first. I knew that the plank standing there might possibly have become decayed, and I used all precautions I could. I tried the plank as well as I could, by putting out my foot and springing on it, before I started across. This was the first set north of the ladderway. When I got to the next set north of that, I tried the plank, and found that it would support me, and I went across; and so with the third set. When I got to the fourth set, I did

the same as I did with the others. When I started across the plank, it broke right straight in the center, just as a card would break, and down I went."

Under these circumstances, the respondent is chargeable with the reckless assumption of the risks involved in trusting his weight on the plank. It was entirely unnecessary. He had timber and planks at his disposal, and could have procured a sound plank to form for himself a safe passageway. There was timber in the mine and in the yard which he could have procured for the asking. He could have walked on the caps, which are 8x10 inches; and this is the usual method of proceeding through dangerous stopes, where planks are liable to be rotten. He incumbered himself with a rope and pulley in one hand, and his candle in the other, so that he had no opportunity to save himself when the plank broke. He could have proceeded by the safe ladderway up to the 550-foot level, and there made fast his rope and tackle. The omission to take these ordinary precautions, under the circumstances, was an assumption of the risks involved, and the consequences cannot now be thrown upon the appellant. He knew that, if the plank happened to be decayed or defective, there was no custom of the company, or of any mine, to repair it. He knew that he was thrown entirely upon his own discretion and judgment, and could expect nothing on account of any care on the part of the employer. The courts, without hesitation, in all cases like this, deny relief to the party injured. A contrary rule would make the employer not only an insurer, but an insurer against the recklessness and carelessness of the employé himself. From a careful examination of the evidence in this case, we are clearly of the opinion that respondent was guilty of contributory negligence, which led to the accident, and, therefore, that he cannot recover. In support of these propositions, we cite the case of *Hazelhurst* v. *Lumber Co.*

(Ga.) 19 S. E. 756, where it is held that where the evidence shows that the danger of the work in which the plaintiff was engaged must have been as obvious to himself as to his employer, and that there was no emergency requiring him to expose himself to the danger, he is not entitled to recover. In *McGrath* v. *Railway Co.*, 9 C. C. A. 133, 60 Fed. 555, it was held that a railway employé who, when engaged in removing a wrecked train, goes upon a bridge, the defects of which are patent, he assumes the risk arising from such defects; and the same doctrine was held in *Piper* v. *Iron Co.* (Md.) 27 Atl. 939; *Stone Co.* v. *Tate* (Ind. App.) 37 N. E. 1065; *Kilroy* v. *Foss* (Mass.) 36 N. E. 746; *Burgin* v. *Railroad Co.* (Ala.) 12 South. 395; *Murphy* v. *Rubber Co.* (Mass.) 34 N. E. 268. The general principle is laid down in *Knight* v. *Cooper* (W. Va.) 14 S. E. 999, that, where the servant willfully encounters dangers which are known to him, the master is not responsible for any injury occasioned thereby. *Foley* v. *Light Co.* (N. J. Sup.) 24 Atl. 487; *Sauer* v. *Oil Co.* (La.) 9 South. 566.

From a careful examination of this case, we are of opinion that plaintiff's own negligence and carelessness contributed to the injuries complained of, and, therefore, that he cannot recover. Judgment reversed, with directions to the court below to grant a new trial.

Bartch and King, JJ., concur.