CHARLES HONE, Respondent, v. THE MAMMOTH MINING COMPANY, a Corporation, Appellant.

No. 1471.   (75 Pac. 381.)

1. **Master and Servant: Want of Ordinary Care: Contributory Negligence.**
   There is a want of ordinary care constituting contributory negligence only where, under all the circumstances of the case, something was done or omitted which an ordinarily careful and prudent person in like situation as the person injured would not have done or omitted, and which was the efficient and proximate cause of the injury.[1]

2. **Same: Question for Jury.**
   The want of ordinary care constituting contributory negligence must be determined from the facts disclosed in each particular case, and is generally a question of fact for the jury, and not of law for the court.[2]

3. **Same.**
   Plaintiff, an inexperienced miner, was injured by a cave in a stope, and the evidence tended to show that from the de-

---

[1] Faulkner v. Mammoth Min. Co., 23 Utah 437-441, 66 Pac. 799.
[2] Holland v. Oregon Short Line R. Co., 26 Utah 209, 212, 72 Pac. 940; Linden v. Anchor Min. Co., 20 Utah 134, 148, 58 Pac. 355, 358.

portment and statements of experienced miners present he thought the place at which he was injured was not dangerous; that "practical miners acknowledged it to be a fact that in a large stope a cave comes in piecemeal," that ordinarily a stope properly timbered will not cave; that those present did not expect the stope to cave when it did, and were waiting for "the boss to come and see where he would send them to work." *Held*, that the question of his contributory negligence was for jury.

**4. Same: Assumption of Risk.**
A servant assumes the natural and ordinary risks of his employment, but the negligence of the master is not among them, and the master is liable whenever that is the proximate cause of injury to the servant.

**5. Same: Conclusiveness of General Verdict.**
In an action by an employee for an injury claimed to be due to defendant's negligence, a general verdict is conclusive on the question of contributory negligence and assumed risk.

(Decided February 3, 1904.)

Appeal from the Fifth District Court, Juab County.— *Hon. T. Marioneaux,* Judge.

Action to recover damages for personal injuries alleged to have been occasioned by the negligence of the defendant. From a judgment in favor of the plaintiff, the defendant appealed.

AFFIRMED.

*Messrs. Sutherland, Van Cott & Allison, S. R. Thurman, Esq.,* and *Messrs. Hurd & Wedgwood* for appellant.

*Messrs. Powers, Straup & Lippman* for respondent.

STATEMENT OF FACTS.

This is an action to recover for personal injuries to plaintiff, alleged to have been caused by the negligence of the defendant while the plaintiff, as an employee of the defendant, was engaged as a miner in defendant's mine. The complaint in substance alleges

that the defendant negligently failed to furnish plaintiff with a reasonably safe place in which to work, and negligently permitted the place where the plaintiff was by the defendant sent to work to become and remain unsafe; that the defendant, after it had been informed that the plaintiff was inexperienced as a miner, not having been previously engaged in the business of mining, and after it had become fully aware of the unsafe and dangerous condition of the place in which the plaintiff was by the defendant sent to work, negligently failed both to warn or inform plaintiff of the unsafe and dangerous condition of said place, and by timbering to make and keep the same reasonably safe; and that while the plaintiff was in the service of the defendant in said place and unaware, by reason of his inexperience, of the unsafe and dangerous condition of the same, owing to the alleged negligence of the defendant, a cave occurred, and caused the injury of which the plaintiff complains. The defendant, in the answer, denies the alleged negligence, and pleads the contributory negligence and assumed risk of the plaintiff. The jury returned a verdict in favor of the plaintiff, and judgment was entered thereon.

The appellant assigns as error the refusal of the court to grant a new trial. The first objection urged in the brief by appellant's counsel, is that "the evidence affirmatively shows that plaintiff was guilty of contributory negligence, without which the accident and injury would not have happened." It appears from the evidence that the plaintiff was inexperienced as a miner, and that the defendant was aware of the fact; that the plaintiff was injured about 1:30 o'clock a. m., on the 18th day of August; that he, with several other miners, was sent by the defendant's shift boss to work on the night shift in the "800" stope, and that they commenced to work about 12 o'clock p. m. on the 17th of August; that, for several days previous to the accident, rock had been shelling and dropping from the wall of the stope, and the timbers and track in the same had been

settling, and that both the defendant's foreman and shift boss were aware of that fact.

The shift boss testified: "I first heard of the danger in the '800' stope right after supper time. The men came up about 10 o'clock. We used to have an hour for supper. I was on top. I was about coming back from supper, and I heard some of the boys talking, and went over to where they were. I heard them talking among themselves, saying that they thought the stope was settling. That was on the night of the 17th, about 10:30. I went over to a man named Joe Tilly. I asked him about it. He said he thought she was settling a little. 'Well,' said I, 'you go right down and look after it, Joe,' and I says, 'if there is any danger, for God's sake get the men out of there,' and he says, 'All right.' It must have been possibly 10:30, somewhere along there, when I had anything of apprehension of anything unusual in the stope. At 10:30 the boys were at supper, and they were talking that the stope was settling. At that time I went to Joe Tilly and asked him about it, and he told me that it was settling a little. After that, at 12 o'clock, I sent laborers down, and among the laborers was Hone. I says to Tilly, 'Just stay there and watch it, and, if you think anything is dangerous, get the men out.' "

The shift boss failed to inform the plaintiff, or any of the other employees so sent down, of the threatened danger. It further appears from the evidence that, after the men so sent down began to work (but how long after does not appear), they were warned of the approaching cave by the falling of a large rock, and the increased dropping of loose material in the "800" stope, and, after about twenty minutes occupied in removing their tools and the car on the track beneath the stope, they assembled at a place in a drift 1,200 feet long leading from the stope to the main working shaft, about thirty feet from the stope, and while they were standing there the stope caved, and the current of wind in the drift caused by the cave drove the car, taken

from beneath the stope, upon the plaintiff, and injured him. The evidence is indefinite and conflicting as to the time which elapsed between their assemblage at said place and the occurrence of the cave. It is, however, clear that sufficient time elapsed to enable them to retreat to the mule drift, which runs at a right angle from the drift in which they so assembled, and is situated 100 feet from the main working shaft, and also to a large room in said drift 600 feet from the stope, and a crosscut sixty feet from said stope. The drift leading from the stope to the shaft was winding. Among the employees of the defendant so assembled there were three or four experienced miners.

The plaintiff testified that he did not know how high the stope was; that he believed the place to which the employees retreated was safe; that he asked the miners if it was safe, and they said there would not be much concussion, and, if there was, if we would go out near the shaft we would go down it, and that it was as safe there as anywhere; that he did not know any better, and believed them; that they were experienced men, and that he listened to them and judged they knew more about it than he did; and that, when he saw so old and experienced miners there taking it easy, he thought it was safe there.

Gilbert Losee, a witness for the plaintiff, who was present, testified that "the miners did not seem to be excited at all; they said the concussion would not hurt us at all; there were too many outlets; that the concussion would not be enough to throw us down, and that if it was, and we were out to the shaft, it would blow us down it." This witness further stated that there were air passages down to the 900 level, up to the 700 level, and through to the Grand Central Mine.

J. W. Reed, a miner who had worked in the mine a year and nine months, and who was present at the accident, testified as follows: ". . . Some of the boys went back in the stope and got the cars out that was standing empty, and we got back in the drift where

we knew the ground would not fall, and talked about the cave. We thought there was so much way for the air to get around that the concussion would not hurt us and we were safe there, and waited till the boss came down to see where he would send us to work. When we were talking about the concussion, Hone was in the crowd. We were all together. It was a general discussion. . . . Among the miners the discussion in the presence of Hone was that the ground where he had got to was safe, and there was nothing to fear, only the concussion, and that had lots of room to escape. I presume we did not think the stope would come in as soon as it did. We did not expect it to cave before morning, maybe not until the next day, because the timbers generally take time to break, and the concussion of air so they will give less. My experience is, it is seldom that the cave comes all down.''

James A. Beaman, a witness for plaintiff, testified as follows: ''I have been engaged in mining thirty-five years; have worked in a great many mines; have had experience on the ground where rock is shelling, or where it is 'working,' as it is called. In a stope that is one hundred feet high, and fifty to seventy-five feet wide, and one to two hundred feet long, rock shelling and dropping would indicate to me that there was great danger of a portion of the stope coming in. Suppose, in addition, that the track over which the cars were run would swell, rising up apparently from pressure, and the sets were sets raised above it, that would show that the ground was working either below or above, and if the ground was working it would indicate danger of its caving. Under those conditions it would not be safe to remain. I have been in mines when caves have occurred in large stopes. I never was in but two or three that I remember. I don't know whether caves in large stopes are very rare occurrences. In my experience of thirty years, two is all that I could witness. I will admit that the falling in of an entire stope, while it is being worked, is an unusual occurrence. Practically, miners acknowl-

edge it to be a fact that in a large stope a cave generally comes in piecemeal.''

The stope which caved was 200 feet long, 75 feet wide, and 100 feet high, and was timbered by square sets the dimensions of the main timbers of which were 8 by 8 inches.

J. C. Balch, a witness for the plaintiff, testified: ''I have been a miner for twenty-five years, and have worked in a great many places. I have had experience in mines when rock would crumble and shell. That indicates to the practical miner that the ground is moving and working, and, if the ground is moving and working, the usual and natural result is that it will fall sooner or later. If a stope is timbered properly with square sets eight by eight, as the ore is taken out, and the country rock is lime, there should be no crumbling or falling of rock.''

The country rock in defendant's mine is lime. Edward Cox, who for two years was defendant's foreman, testified, in behalf of defendant, that this splitting and shelling was not an indication of danger all of the time, but was some of the time in some places, and that such ground required close attention; that ordinarily, where square sets and lagging are properly put in a stope, there will be no cave, but there are exceptions to that.

The assignment most strenuously urged by defendant's counsel is ''the evidence affirmatively shows that plaintiff was guilty of contributory negligence, without which the accident and injury would not have happened.''

It appears that the plaintiff was twenty-four years old. Defendant's counsel contend that plaintiff knew the location of the shaft, and the distance from the shaft to the stope, knew the location of the ''mule drift'' running fifty feet at right angles from the main drift situated 100 feet from the shaft, knew, or must have known, of the crosscut only 30 feet from where he stood, and of the large room 600 feet away, and that these were places of safety; that he was perfectly famil-

iar with the main drift, and knew that it was not straight but curved and bent, and that there was little or no danger of being blown down the shaft if he went in that direction; that he knew a fall would cause a gust of wind— "a rush of air," and that, having ample opportunity of seeking a place of absolute safety, and knowing from the threatening indications that a cave in the stope was liable to occur, he should have disregarded the assurance of the experienced miners respecting the safety of the place where the accident occurred, and retreated to one or other of the places last mentioned, and that his failure to do so, and remaining in such proximity to the stope, was contributory negligence on his part, and the proximate cause of his injury.

It appears from the testimony that the plaintiff knew of the existence of the "mule drift," and that it was 100 feet from the shaft, and that in the drift leading from the stope to the shaft there were turns, but it does not appear that he was aware of either the crosscut or the large room before mentioned. It also appears that he knew that, if the stope caved, there would be a rush of air.

BASKIN, C. J., after stating the foregoing facts, delivered the opinion of the court.

Contributory negligence, as defined in 7 Am. & Eng. Ency. of Law, p. 371, "is the want of ordinary care upon the part of a person injured by the actionable negligence of another, combining and concurring with that negligence, and contributing to the injury as a proximate cause thereof, without which the injury would not have occurred." This is an accurate definition of contributory negligence. See Faulkner v. Mammoth Mining Co., 23 Utah 437-441, 66 Pac. 799. There is a want of ordinary care on the part of the plaintiff only when, under all of the circumstances and surroundings of the case, he has done, or omitted to do, something which "an ordinarily careful and prudent person," in a like situation as the plaintiff, would not

have done, or omitted to do, and which was the efficient and proximate cause of plaintiff's injury. "The test of contributory negligence or want of due care is not always found in the failure to exercise the best judgment or the wisest precaution, but some allowances may be made for the influences which ordinarily govern human action, and what would under some circumstances be a want of reasonable care might not be such under others." Lent v. N. Y. C. & H. R. R. Co., 120 N. Y. 467, 473, 24 N. E. 653. The want of ordinary care, however, must be determined from the facts disclosed in each particular case and is generally a question of fact for the jury, and not one of law.

This court held, in Holland v. Oregon Short Line R. Co., 26 Utah 209, 212, 72 Pac. 940, that "contributory negligence is a question of law only when the testimony is not conflicting, and is such as permits no reasonable difference of opinion as to its effect; but, whenever there is any doubt as to the facts, it is the province of the jury to determine the question, or, whenever there may reasonably be a difference of opinion as to the inference and conclusions from the facts, it is likewise a question for the jury. It belongs to the jury, not only to weigh the evidence and find upon the questions of fact, but to draw conclusions as well, alike from disputed and undisputed facts."

This court, in the case of Linden v. Anchor Mining Co., 20 Utah 134, 148, 58 Pac. 355, 358, held, in the opinion delivered by Mr. Justice McCARTY, that: "It is well settled that, where there is uncertainty as to the existence of either negligence or contributory negligence, the question is not one of law but of fact, and to be settled by a jury; and this whether the uncertainty arises from a conflict in the testimony, or, because of the facts being undisputed, fair-minded men will honestly draw different conclusions from them."

In the case of Grand Trunk Ry. Co. v. Ives, 144 U. S. 408, 12 Sup. Ct. 679, 36 L. Ed. 485, Mr. Justice Lamar, in the opinion, said: "The terms 'ordinary care,'

'reasonable prudence,' and such like terms, as applied to the conduct and affairs of men, have a relative significance, and can not be arbitrarily defined.   What may be deemed ordinary care in one case may under different surroundings and circumstances be gross negligence. The policy of the law has relegated the determination of such question to the jury, under proper instructions from the court.   It is their province to note the special circumstances and surroundings of each particular case, and then say whether the conduct of the parties in that case was such as would be expected of reasonable, prudent men under a similar state of affairs.   When a given state of facts is such that reasonable men may fairly differ upon the question as to whether there was negligence or not, the determination of the matter is for the jury.   It is only where the facts are such that all reasonable men must draw the same conclusion from them that the question of negligence is ever considered as one of law for the court.   .   .   .   As the question of negligence on the part of the defendant was one of fact for the jury to determine, under all the circumstances of the case, and under proper instructions from the court, so also the question of whether there was negligence in the deceased which was the proximate cause of the injury was likewise a question of fact for the jury to determine under like rules.''

As it appears that the plaintiff was an inexperienced miner, and evidence was introduced tending to show that from the deportment and statements of the experienced miners present he thought the place at which he was injured was not dangerous, that ''practical miners acknowledged it to be a fact that in a large stope a cave comes in piecemeal,'' that ordinarily a stope properly timbered with square sets will not cave, that it was not expected by those who were present that the stope would cave before morning or until the next day, and that they were waiting there for ''the boss to come and see where he would send them to

work,'' and that the plaintiff did not know the height of the stope, we can not say that an ordinarily careful and prudent person, under the circumstances, would not, as the plaintiff did, have stayed at the place of the accident. Therefore the question of contributory negligence was properly submitted to the jury.

The second, and only other, objection urged by appellant's counsel, is that ''the evidence affirmatively shows that by his acts and conduct plaintiff knowingly and voluntarily assumed the risk of the accident and injury.'' The servant assumes the natural and ordinary risks incident to his employment, but the negligence of the master is not among the risks so assumed. Whenever the master's negligence is the proximate cause of injury to the servant, the master is liable. Much evidence was introduced in the case at bar tending to prove the alleged negligence of the defendant, and that such negligence was the proximate cause of plaintiff's injury; therefore the issues of both assumed risk and contributory negligence were properly submitted to the jury. The general verdict rendered in favoi of the plaintiff is conclusive, both as to the question of contributory negligence and assumed risk.

The judgment is affirmed, with costs.

BARTCH and McCARTY, JJ., concur.