27   193
27   533

THOMAS MATHEWS, Respondent, v. THE DALY-WEST MINING COMPANY, a Corporation, Appellant.[1]

No. 1477.    (75 Pac. 722.)

1.  **Master and Servant: Injury to Employee: Evidence: Negligence.**
    Plaintiff, who was employed in defendant's mill as repairman, was informed by its superintendent that he was going to shut the mill down for half an hour for repairs, as was the custom when repairs were being made, and requested plaintiff to perform that duty.  Plaintiff began work, and leaned over a belt to tighten a cap, when the superintendent gave the order to start the mill, without the customary warning, and plaintiff was injured. *Held*, gross negligence on the part of the superintendent, immediately causing the injury.

2.  **Same: Contributory Negligence: Assumption of Risk.**
    Evidence in an action by an employee for a personal injury considered, and *held* insufficient to show contributory negligence or assumption of risk, as a matter of law, so as to warrant a nonsuit or direction of a verdict for defendant.[2]

[1]Fritz v. Light Co., 18 Utah 493; Cook v. Mining Co., 12 Utah 51, distinguished.
[2] Hone v. Mammoth Mining Co., 27 Utah 168; 75 Pac. 381.
27 Utah 13

Mathews v. Daly-West Mining Co.

3. Same:

An employee, while leaning over a belt in a mill which had been shut down for repairs, was suddenly placed in great peril by an order to start the mill without giving the customary warning, and he thereupon gave a wrong order to "back up," thus increasing the danger. *Held*, that this was not contributory negligence, under the circumstances.

4. Same: Instructions: Applicable to Facts,

An instruction was properly refused where there was no evidence tending to prove the supposed state of facts on which it was predicated.

5. Same: General Exceptions.

Where an instruction includes different and independent subjects, a general exception thereto can not be considered on appeal unless the instruction as a whole is incorrect.[3]

6. Same: Evidence.

A repairman in a mill had a right to implicitly rely on the statement of the foreman that he was going to shut down for repairs, and in an action for an injury to him claimed to be due to negligently starting it up without warning, it was not reversible error to permit him to testify that he did so rely.

7. Same.

In an action for injury to a repairman in a mill, claimed to have been caused by negligently starting the same without warning after it was shut down for repairs by the superintendent, and while plaintiff was at work, it was not error to reject an expert opinion of a witness as to whether, in his experience as a machinist, a man could, in the nature of things, state that he was going to shut the mill down for repairs for a given length of time.

(Decided February 5, 1904.)

Appeal from the Third District Court, Salt Lake County.—*Hon. C. W. Morse*, Judge.

Action to recover damages for personal injuries alleged to have been caused by the negligence of the defendant. From a judgment in favor of the plaintiff, the defendant appealed.

AFFIRMED.

[3]People v. Thiede, 11 Utah 241; 39 Pac. 837; Whipple v. Preece, 24 Utah 364, 373; 67 Pac. 1072.

*Messrs. Dickson, Ellis & Ellis* and *Messrs. Snyder & Wight* for appellant.

This accident and the facts connected with it are directly referable to, and controlled by the maxim *volenti non fit injuria,* and while this maxim has lost much of its literal significance as it came to us from the civil law, that fact and verbal construction or meaning are practically unimportant; the ultimate inquiry being as to whether in a given case there was present or about that *"volens"* or intelligent choice, which qualifies or characterizes the act, that constitutes the proximate cause of the accident, as that of the master or of the servant.   If it was the act of the servant, and voluntarily done, which proximately brought about the injury, or placed the servant where he could receive the injury, or if his act, voluntarily done contributed to such cause, in such degree as that but for his act the injury would not have happened, of course, the consequences are his, and the master is not liable. 32 Am. Law Review, 58-9; Note to Davis v. Forbes, 47 L. R. A. 199; Senior v. Ward, 1 El. & Bl. 385, 102 E. C. L. 384-385; Caswell v. Worth, 5 El. & Bl. 849, 85 E. C. L. 848, 849; Griffith v. Gidlow, 3 H. & N. 648; Britton v. Great Western, etc., Co., 7 Exch. 130; Buzzard v. The Petrel, 4 Fed. Cas. 932; Thomas v. Quartermain, per Bowen, L. J., 18 Q. B. 685, 698.

When there are two or more methods or ways by which a servant may perform his duties and he voluntarily chooses the most hazardous, knowing it to be such, he does so at his own risk.   Fritz v. Electric Light Co., 18 Utah 493, 503; Bailey, Mast. Liab. 169; St. Louis Bolt & Iron Co. v. Brennan, 20 Ill. App. 555; Same v. Burk, 12 Ill. App. 369; Cook v. Mining Co., 12 Utah 51; Colo. Coal & Iron Co. v. Carpita, 40 Pac. 248; Richardson v. Carbon Hill Coal Co., 32 Pac. 1012; Lewis v. Simpson, 29 Pac. 207.

Where a person having a choice of two ways, one of which is perfectly safe and the other of which is subject

to risks and dangers, voluntarily chooses the latter and is injured, he is guilty of contributory negligence and can not recover.'' 1 Bail. Per. Inj., sec 1123; Tenn. C. & I. Co., v. Herndon, 101 Ala. 451, 14 So. 287; Bail. Per. Inj., secs. 1124a, 1129, 1134; Wheat., Neg. 440; Richmond, etc., Ry. Co. v. Bivins, 103 Ala. 142, 15 So. 515; Louisville Ry. Co. v. Orr, 90 Ala. 548, 8 So. 360; Mobile v. Holborn, 84 Ala. 133, 4 So. 146; Haven v. Bridge Co., 151 Pa. St. 620, 25 Atl. 311; Saner v. Ry. Co. (Mich.), 65 N. W. 624; Dandie v. Ry. Co. (La.), 7 So. 792; Georgia, &c. Ry. Co. v. Hallman, 23 S. E.; Cunningham v. Ry. Co., 17 Fed. 882; Ry. Co. v. O'Shaughnessy, 122 Ind. 588, 23 N. E. 675; Wilber v. Ry. Co., 86 Wis. 535, 57 N. W. 356; a good case; Moody v. Smith, 67 N. W. 633; Hurst v. Burnside, 12 Or. 520, 8 Pac. 888; George v. Ry. Co., 19 So. 784; U. P. Ry. Co. v. Estes, 16 Pac. 131; Galvin v. Ry. Co., 162 Mass. 533, 39 N. E. 186; Lewis v. Simpson, 3 Wash. 341, 29 Pac. 207; Frazier v. Ry. Co., 81 Ala. 185, 1 So. Rep. 85.

*S. R. Thurman, Esq.,* and *Messrs. Hurd & Wedgwood* for respondent.

BASKIN, C. J.—This is an action to recover for personal injuries alleged to have been caused by the negligence of the defendant. The answer denies the negligence alleged in the complaint, and alleges contributory negligence upon the part of the plaintiff. A verdict and judgment were rendered in favor of the plaintiff.

The defendant made a motion for a nonsuit, and, when the testimony was closed, requested the court to instruct the jury that, as a matter of law, the plaintiff was not entitled to recover. The denial of both the motion and request is assigned as error. The ground of the motion and request is that the evidence fails to show any negligence on the part of the defendant, and shows contributory negligence on the part of the plaintiff.

The plaintiff, at the time of the injury, on the third day of October, 1901, was 32 years old, and was, and

had for one year previously been in the employ of the defendant as repairman in and about defendant's mill. F. W. Shearman was, and had been since July, 1899, the superintendent. The plaintiff testified, in substance that, on the day he was injured, Mr. Shearman said to him that he was going to shut down the mill for half an hour for repairs, and told him to look over the mill as quickly as he could; that shortly afterwards the mill was shut down, and the plaintiff began to look it over, and having, while doing so, discovered a cap which was nearly off, he procured a candle and a wrench, and while lying across a belt, and engaged in tightening the cap, the mill started, and he was caught between the belt and its pulley, and was injured; that he had been so engaged about six minutes before the mill was started; that there was no good way to tighten the cap, except to lie across the belt, but by getting down underneath the mill, and lying on his back, with somebody to hold a candle, he could, even when the mill was in operation, have tightened the cap without being exposed to danger, but to do the work in that manner was unhandy, and he did not think he could have easily twisted the cap down while the mill was running.

Lawrence Abeglen, an employee, whose standing duty was to assist plaintiff to make repairs, testified: "That there was room enough for him to get under by tight squeezing. If the gearing was out of order, he could fix it under there. Couldn't tighten screws or bolts there very handy. Could have done it with my assistance. I was sent there for that purpose. Didn't ask me." That it was a common thing for him to get on the belt when the mill was stopped — no danger then. It was done in a conspicuous way, so everybody around the mill could see him when it was stopped." This witness further testified, in substance, that he was present, and heard Shearman, the superintendent, say that he was going to shut down the mill for half an hour, and at the same time he told the plaintiff "to look over the mill, and directed me to help him." The evidence

shows, without conflict, that the place underneath the mill, mentioned by the plaintiff in his testimony, was safe, and that the place where the plaintiff received his injuries was also safe when the mill was not in motion. It likewise appears from the evidence that it was the custom to shut the mill down every day for repairs, and that repairs were not made while the mill was running, and that it was also customary for the superintendent, or his substitute, to give warning when the mill was about to be started, loud enough to be heard throughout the mill, and that, on the occasion of plaintiff's injury, no warning was so given. Shearman, the superintendent, who was present on the occasion of plaintiff's injury, and ordered the mill started up, testified: "We always give a signal in starting up; that is, often do. I am not always down. If I am down on the floor just level with the engine-room floor, and give the signal to start up to the engineer, I always give the signal, "Look out!" . . . The purpose in giving the signal is to have all the employees in their proper positions, to turn on their valves, turn on water, begin feeding ore, and so on. Such a signal was not given to warn men to get out of dangerous places."

Appellant's counsel contend that, as the plaintiff knew that there was a place underneath the mill where he could tighten the loose cap with safety, he was guilty of contributory negligence, and assumed the risk, by attempting to do so at the place where he was injured; and in support of this contention they rely upon the well-settled rule of law that when the servant knows, or by the exercise of ordinary care can ascertain, that there are both safe and dangerous ways by which he can perform his duties, if he voluntarily chooses to pursue one of the ways that is dangerous, he assumes the natural and ordinary risk incident to the way he has chosen, and is barred from recovering for any injury which he may have received in the discharge of his duties, both on the ground of contributory negligence and assumed risk, notwithstanding the master's negligence

may have also contributed to the injury.   It is also well settled that the negligence of the master is not among the risks so assumed by the servant.   Therefore when the servant, in the discharge of his duties, is in a position which is, under the conditions which then exist, naturally safe, but is suddenly made dangerous by the negligence of the master, and injury to the servant is immediately caused thereby, the master is liable.   It was shown by the preponderance of evidence in the case at bar that the superintendent informed the plaintiff that he was going to shut the mill down for half an hour for repairs, and desired the plaintiff, who was the repairman, to perform that duty.   The mill was soon thereafter shut down.   The evidence also shows, without conflict, that while repairs were being made it was the custom to shut down the mill, and, when shut down, before again starting it, to give warning; that on the occasion of the plaintiff's injury the superintendent was present, and gave the order to start the mill without giving the customary warning.   It is clear from the evidence that the plaintiff's position on the belt, until the mill was started, was not a dangerous one, and that when the mill was not running, he could tighten the cap there with perfect safety, and accomplish his task there more conveniently and with greater dispatch than underneath the mill.   Under the circumstances disclosed by the evidence it was gross negligence on the part of the superintendent to start the mill without giving the customary warning.   This negligent act of the superintendent suddenly rendered the place occupied by the plaintiff (which before was safe) dangerous, and immediately caused plaintiff's injury.

Appellant's counsel contend that the decisions of this court in the cases of Fritz v. Electric Light Co., 18 Utah 493, 56 Pac. 90, and Cook v. Mining Co., 12 Utah 51, 41 Pac. 557, sustain their contention.   In one of these cases the danger to which the servant was exposed was naturally incident to the uses of electrical appliances, and in the other case was inherent in the

plank over which the servant was passing when injured. In neither of these cases was it shown, as in the case at bar, that the position of the servant, which before the accident was safe, was at the time of the injury suddenly made dangerous by the negligent act of the master. It is clear that these cases are not in point.

We can not say that the evidence in this case shows, as a matter of law, either contributory negligence or assumed risk on the part of the plaintiff. This being so, both the motion for a nonsuit and the request to direct a verdict for the defendant was properly denied. See Hone v. Mammoth Mining Co., 27 Utah 168, 75 Pac. 381, decided by us at the present term.

It further appears that at the time the plaintiff was injured the mill was started in a way that caused the machinery to move backward, instead of forward, and the plaintiff, by reason of that fact, was drawn in between the belt and the pulley around which the belt passed, and that, while the plaintiff was being so drawn in, he cried out, "Back up." The cause of plaintiff's peril was the backward movement of the pulley. Its forward movement would have carried him away from danger. The appellant claims that, as the respondent's contention is that he was injured by the mill being started in the wrong way, the order, "Back up," which he himself gave, was a wrong one, and contributory negligence on his part. The plaintiff was, by the negligent act of the defendant in starting the mill without giving the customary warning, placed in a position of extreme peril, and it is evident from the cry which he uttered that he was terror-stricken by the dangerous emergency suddenly caused by starting the mill. Under such circumstances, the master is liable, even when the servant, as in the case at bar, to escape the impending danger, has done something which increases his peril, or something which, if he had not done, he would not have been injured, because "persons in great peril are not to be required to exercise all of that presence of

mind and carefulness which are justly required of a careful and prudent man under ordinary circumstances.'' Beach on Contributory Negligence, section 40. The wrong order given by the plaintiff was not, under the circumstances disclosed, contributory negligence.

Appellant also took exception to the refusal to give the following instruction requested by its counsel, viz.: ''You are further instructed that if plaintiff, from his position as repairman, or from any other source, knew or ought to have known that, during the time that the mill closed down on the occasion in question, it was the intention of Shearman to set up the rolls, or that they were likely to do that, and if you further believe from the evidence that the plaintiff knew that, in order to set up the rolls, they would have to give the engine a partial turn one way or the other, then it was negligence on his part to get in a position where he would be likely to get caught if any partial turn were made, and if, with knowledge of all these facts, if you believe them to be facts, he went into an unnecessary position of danger, and such position of danger was the proximate cause of his injury, if any he received, he cannot recover in this action.'' There was no direct evidence, nor any evidence, from which it could be reasonably inferred that the plaintiff knew or ought to have known that Shearman, the foreman, intended to set up the rolls, or that he was likely to do so, or, in doing so, on that occasion, it was necessary to give the engine a partial turn. As there was no evidence tending to prove the supposed state of facts upon which the instruction asked for was predicated, it was without foundation, and the request to give it was properly refused.

The appellant assigns as error the giving of the sixth, seventh, tenth, and eleventh instructions. The exceptions respectively taken to these instructions at the trial are as follows: ''The defendant excepts to the sixth instruction because it limits the liability of plaintiff for the risk assumed to narrower limits than justified by the pleadings and evidence in

this case, and does not submit to the jury the entire law upon that branch. The defendant excepts to the seventh instruction because it limits the question of negligence of a fellow servant within narrower limits than justified by the law, and because it authorizes the jury to find in favor of the plaintiff, even though the negligence of a fellow servant was the proximate cause of the injury. The defendant excepts to the tenth instruction because it enlarges the measure of defendant's liability, and restricts the measure of the plaintiff's liability for contributory negligence, and presents matters for the consideration of the jury, in respect to rules and regulations, which are not put in issue by the pleadings in this case, and is therefore immaterial and erroneous. The defendant excepts to the eleventh instruction for the reason that it defines inaccurately the law of fellow servants and vice principals, and presents to the jury an immaterial issue in this case, and because it is contradictory to the seventh instruction.'' Exceptions of the same character as the foregoing were taken at the trial of the case of People v. Thiede, 11 Utah 241, 39 Pac. 837, which was affirmed on appeal to the Supreme Court of the United States (Thiede v. People, 159 U. S. 521, 16 Sup. Ct. 62, 40 L. Ed. 237), and in the opinion of that court the exceptions appear in full, and are as follows: ''Defendant excepts to the giving of the instructions to the jury on the definition of the word 'malice,' and application to this case, as being misleading, confusing, and not correctly stating the law as applicable to this case, and tending to influence the jury to find a verdict not justified by the evidence in this case. The defendant excepts to the giving of the instruction of the court to the jury on the question of murder in the second degree, as not being justified by the evidence, and tending to mislead and confuse the jury, and cause them to render a verdict not sustained by the evidence in this case. The defendant excepts to the instruction of the court to the jury in defining 'deliberation,' and

that the same does not properly and legally define the meaning of the words used in the indictment in this case. The defendant excepts to the instruction of the court to the jury in the definition and meaning of 'premeditation,' as misleading and not correct, as charged in the indictment in this case." The territorial court held that these instructions were "too general to raise any question for the consideration of the court," and, in support thereof, Mr. Justice KING, in the opinion rendered, quoted the following from the opinion in the case of Hickory v. U. S., 151 U. S. 316, 14 Sup. Ct. 334, 38 L. Ed. 170: "The rule in relation to exceptions to instructions is that the matter excepted to shall be so brought to the attention of the court before the retirement of the jury as to enable the judge to correct the error, if there be any, in his instructions to them, and this is also requisite in order that the appellate tribunal may pass upon the precise question raised without being compelled to search the record to ascertain it." In the case of Whipple v. Preece et al., 24 Utah 364, 373, 67 Pac. 1072, Mr. Justice BARTCH, in the opinion, said: "The exceptions are too general, simply referring to whole paragraphs of the charge. To be of avail in an appellate court, they must specify the particular objectionable matter, so as to give the trial judge an opportunity to make a correction, notwithstanding that it is provided in section 3151, Rev. St. 1898, that 'no reason need be given for such exceptions.' That section does not authorize the making of wholesale exceptions, without reference to the specific matter which is claimed to be objectionable. The reason of the rule which requires the specific objectionable matter to be pointed out in the presence of the jury is obvious. If the objection to such matter be well taken, the court may then make the correction called for, and thus not only save the expense of another trial, but also the time of the court. The rule has been firmly established in this State." Each of the instructions in question included

a number of separate and independent matters, most, if not all, of which were, beyond question, relevant and correctly stated. The exception to each instruction as numbered is therefore simply a general exception to it as a whole, and not to the particular matter objected to upon the appeal. It is a settled rule of this court that an exception to the whole of a particular instruction which includes different and independent subjects is a general exception, and will not be considered by the appellate court unless the instruction as a whole is incorrect. It is clear that the exceptions in this case were not properly taken at the trial, and can not, therefore, be considered.

The plaintiff was allowed, over the objection of the defendant, to testify that he implicitly relied upon the statement of the foreman that he was going to shut down the mill for repairs. The plaintiff had a right to rely on that statement. Therefore it was not reversible error to permit him to testify that he did so. Nor did the court err in rejecting the expert opinion of the witness Murdock as to whether, in his experience as a machinist, a man could, in the nature of things, state that he was going to shut the mill down for repairs for a given length of time.

The judgment is affirmed, with costs.

BARTCH and McCARTY, JJ., concur.