CHENEY v. BUCK.

No. 3400.   Decided March 30, 1920.   (189 Pac. 81.)

1. MUNICIPAL CORPORATIONS—FINDING OF NEGLIGENCE OF MOTORIST WHO STRUCK CYCLIST SUPPORTED BY EVIDENCE. In an action by a cyclist who was struck by a rapidly moving motorcar, evidence *held* sufficient to sustain a finding that the motorist was proceeding at an excessive and negligent speed.

2. MUNICIPAL CORPORATIONS—WHETHER A CYCLIST STRUCK BY A RAPIDLY MOVING MOTORCAR WAS ON THE WRONG SIDE OF THE HIGHWAY HELD FOR THE JURY. In an action by a cyclist who was run down by defendant's rapidly moving motorcar, the question whether the cyclist was on the wrong side of the street as claimed by defendant, *held* for the jury.

3. MUNICIPAL CORPORATIONS—PARTY CONFRONTED WITH SUDDEN EMERGENCY IS NOT HELD TO HIGH STANDARD OF CARE. Where a cyclist was confronted with an emergency resulting from a motorist's driving at an excessive speed, the cyclist cannot be held to the high degree of care to which the motorist should be

held, and, although the cyclist might by a sudden turn have been able to avoid the danger, his failure will not be treated as negligent.[1]

4.    TRIAL—REQUESTED INSTRUCTION PROPERLY REFUSED WHERE IT ASSUMED THAT INJURED PLAINTIFF WAS ON WRONG SIDE OF ROAD. In an action by cyclist run down by motorcar, where question whether the cyclist was on the wrong side of the road was dis‐ puted, an instruction that the motorist had the right to pre‐ sume every person would obey the law by traveling on the right-hand side of the road, and that no duty rested on him until he had reason to believe that the cyclist was traveling on the wrong side of the road, was properly refused, assuming the disputed question of fact.

Appeal from District Court, Second District, Davis Coun‐ ty; *A. W. Agee,* Judge.

Action by Franklin James Cheney against Joseph Buck.

From a judgment for plaintiff, defendant appeals.

AFFIRMED.

*Skeen & Skeen,* of Salt Lake City, for appellant.

*Bagley, Fabian, Clendenin & Judd,* of Salt Lake City, for respondent.

WEBER, J.

The complaint is to the effect that on July 30, 1918, plain‐ tiff was lawfully and rightfully riding a bicycle near the junction of the state highway and Gentile street, in Layton, Davis county, and that defendant negligently, carelessly, and recklessly operated an automobile over and along said high‐ way so as to cause it to run with great force and violence upon, and knock down, the plaintiff. The following acts of

---

[1] *Mathews* v. *Daley-West Min. Co.,* 27 Utah, 193, 75 Pac. 722; *Hicks* v. *Southern Pac.,* 27 Utah, 526, 76 Pac. 625; *Wilcox* v. *Jamison,* 55 Utah, 535, 188 Pac. 638.

negligence are charged in the complaint: (1) Operation of the automobile "at a speed greater than was reasonable and safe and without regard for the character, traffic, and common use of said street and highway, so as to endanger the life, limb, and safety of persons on said highway and street"; (2) driving "said automobile with a reckless disregard for the safety of others, including plaintiff"; (3) failure to bring or have said automobile under control so that the same could be slowed down or immediately stopped to avoid collisions with persons or vehicles; (4) omitting to keep a proper lookout for persons and vehicles, including plaintiff; (5) failing to drive and handle said automobile in a skillful manner; and (6) failure to have said automobile equipped with efficient and serviceable brakes.

In his amended answer defendant denied all the acts of negligence charged against him and affirmatively alleged:

"That on the 30th day of July, 1918, he was driving an automobile on the right-hand side of the public highway through Davis county; that as he approached the intersection of said highway with Gentile street at Layton an automobile and a horse-drawn vehicle were passing eastwardly over the right-hand side of the intersection, and for a time obstructed defendant's view of the left-hand side of the public highway immediately south of the intersection; that defendant reduced the speed of his car for the purpose of passing in the rear of the automobile and the horse-drawn vehicle passing to the eastward; that plaintiff was traveling northward on the west or left-hand side of the public highway, and as defendant passed said automobile and vehicle he, the said plaintiff, was in the act of turning westward on the right-hand side of Gentile street; that defendant instantly threw out the clutch, applied the brakes with great force, and at the same time swerved his car to the right and thereby avoided striking plaintiff, who continued his course westward; that plaintiff failed and neglected to stop his bicycle or to change its course, and by reason thereof, he ran said bicycle into and against the left rear fender of defendant's automobile, and whatever injuries plaintiff received by or through said contact were caused by his own disregard of the rule of the road and in traveling upon the left-hand side thereof and in failing and neglecting to pass around the point of intersection of said streets and in cutting and riding close to the left-hand corner of the intersection and in failing and neglecting to stop his bicycle or to vary its course, and in himself running into and against defendant's said automobile."

The case was tried to a jury, verdict was rendered for plaintiff, and from the judgment entered thereon defendant appeals.

It is unnecessary to go fully into detail as to the testimony save to allude to a few salient and important features. The scene of the accident is thus described by respondent's counsel.

"The state road or main highway runs through Layton in a generally northerly and southerly direction. In the center of the town it is intersected at right angles on the west by what the witnesses call Gentile street; but the continuation of Gentile street on the east is 'jointed'; that is, 'it veers off to the south.' Gentile street at the west side of the main highway where the accident occurred is much wider, north and south, at the junction than on the east side; that is, it broadens out at the junction and is sort of fan or funnel shaped, and there are two distinct roadways branching out and entering the main highway, one on the south side and one on the north, with a but little used V-shaped wedge or space in between. Only the southeast corner of this V, immediately north of the south road, was traveled, and only by vehicles going to the northeast corner, in the direction taken by the Heywood Ford automobile, hereinafter referred to. Gentile street some distance west of the westerly line of the main highway is but forty-four feet wide, whereas at its junction with the west side of the main highway it is about 100 feet wide. Gentile street, so called, at this point consists of two well-defined traveled roadways. Going into Gentile street would be on the south side of the road, leaving a three-cornered piece in the center very near triangular. This V-shaped space is approximately fifty feet wide at the broad or easterly end where it joins the main highway. The two roadways in question on each side of this V are each approximately twenty feet wide."

On the morning of the accident, at about 8 o'clock, appellant Buck was traveling in a seven-passenger Cadillac car through the town of Layton at a high rate of speed, estimated by respondent's witnesses at from thirty to forty miles per hour. Respondent was riding a bicycle northward on the east side of the same highway. Each was approaching Gentile street near the center of Layton. As respondent turned to go westward along the north or right-hand side of what has been described as the south traveled roadway leading into Gentile street, first a milk wagon coming from the west and going east on Gentile street, and then a Ford automobile going in the same direction, both headed eastward on the main

highway, passed in front of him. He was behind or just south of this Ford automobile when hit by appellant's automobile, which had been coming from the north. Respondent was riding at a speed estimated at not more than four miles per hour. Though going through Layton at a speed of from thirty to forty miles per hour, the evidence shows that appellant neither sounded a horn nor gave any other warning signals. One witness standing on the sidewalk at the northeast corner of the intersection, directly opposite Gentile street, seeing appellant's automobile coming south on the main highway, and seeing the Ford automobile coming from the west, and seeing respondent on his bicycle on the south side of the Ford machine, and fearing that an accident was about to occur, waved his hat and called for appellant to stop. Appellant testified that he neither saw nor heard this man. Without perceptible slacking of speed, appellant continued southward, veered to the west as he came to the Ford machine, turning, as some witnesses say, from ten to twelve feet, or ten to fifteen, or possibly as far as twenty feet west into Gentile street. Turning then to the main highway to pass the Ford machine, appellant saw an electric light pole in front of him on the southwest corner, and to avoid collision with the pole turned his automobile in an easterly direction, when the collision with the respondent riding the bicycle occurred. After hitting respondent, though the brakes were applied by appellant, he continued on across the main highway and to the east side of it for a distance of from 100 to 125 feet.

Appellant argues that the speed of the car had no causal connection with the accident, that there was not sufficient evidence of negligence on the part of appellant to go to the jury, and that respondent was guilty of contributory negligence. It is argued that appellant might have gone faster and the accident have been avoided. Possibly so. He might have gone through Layton at fifty or sixty miles per hour and have raced through the town at a moment when no other vehicle was near the crossing and no one have been hurt, but the fact remains that he did race through Layton at a speed which the jury, under the circumstances, considered careless and negli-

gent, and which they had a right to consider as excessive, and which resulted in the accident. Appellant, by his negligence, by his excessive speed, and by disregarding every precaution that he could and should have used, caused the condition which in turn was the cause of the maneuvers when he swerved to the west to avoid the Ford and then suddenly turned east to avoid the electric light pole, and thus brought on the collision with respondent's bicycle. When he saw the Ford car, which had the right of way, ordinary prudence certainly required a speed of less than thirty, thirty-five, or forty miles per hour, which the testimony produced by respondent tended to prove. True, Buck did not see respondent on the bicycle, but it is to avoid accidents that care and watchfulness must be exercised on such occasions. An attempt had been made to warn appellant. One of the witnesses, fearing that an accident was about to happen, waved his hat and called to appellant, who so far neglected to keep any lookout as to fail to observe the warning, or, if he did observe the warning, he paid no attention to it. Continuing his speeding, it was necessary for him to dodge to the west, zigzag around the Ford car, and then suddenly dash to the east to avoid the pole. It is undisputed that respondent was not going over four miles per hour on his bicycle. That he was on the right side of the traveled road seems well established, but whether he was or not was for the jury to say, not for the court. Respondent evidently did not see Buck's car approaching, as the Ford was between them. It is a fair inference that neither appellant nor respondent saw the other. Respondent had no reason to expect a car to dash from behind the Ford, and he was not chargeable with negligence in failing to anticipate appellant's negligence.

It is contended with much plausibility that when respondent saw the appellant's car there was room enough between the Cadillac and the Ford to enable respondent to turn and avoid the collision. When a person is confronted suddenly with an emergency not created by him, he should not be held to the most rigid care and the

highest degree of caution as against one whose carelessness caused the condition. *Wilcox* v. *Jamison*, 55 Utah, 535, 188 Pac. 638 (decided this term); *Mathews* v. *Daly-West Min. Co.*, 27 Utah, 193, 75 Pac. 722; *Hicks* v. *Sou. Pac.*, 27 Utah, 526, 76 Pac. 625. In this case, as claimed by appellant's counsel, respondent might with a quick and sudden turn of the bicycle have avoided the collision. That is possible, but we are not prepared to say that the jurors were not justified in finding that respondent was free from culpable negligence contributing to the collision.

Among the errors assigned by the appellant is the refusal of the court to give to the jury the following requested instruction:

"The defendant had the right to presume that every other person would obey the law by traveling on the right-hand side of the road and would pass around the intersection of the main public highway and Gentile street at Layton without cutting the corner, and no duty rested upon the defendant to stop or change the course of the automobile until he had reason to believe that plaintiff was traveling on the wrong side of the street and cutting the corner."

The trial court was right in refusing to charge the jury as requested. By this instruction the court was requested to assume and tell the jury as a matter of fact that respondent was on the wrong side of the roadway. The court was asked to tell the jury it was respondent's duty to "pass around the intersection of the main public highway and Gentile street." This instruction, with others, requested by appellant, would have invaded the province of the jury and would have taken from the jury issues that were for them, and not for the court, to decide. The requests were properly refused, and it would have been error to have given them or either of them. In a lucid and concise charge the court fully and fairly instructed the jury on all questions properly before them for consideration.

We think the judgment is right. It is affirmed, with costs to respondent.

CORFMAN, C. J., and GIDEON and THURMAN, JJ., concur.

FRICK, J.

While I fully concur with my associate, Mr. Justice WEBER, I, nevertheless, desire to make a further observation respecting the principal contention of appellant.

Appellant insists that it should be held as a matter of law that the plaintiff was guilty of negligence for the alleged reason that at the time of the accident he was using the street in question in violation of our statute by traveling thereon on the south side of the center in going west. The evidence shows that the street in question was not paved, nor was it graded or traveled throughout its entire width. While our statute requires all persons operating a vehicle on a street or roadway when approaching others going in the opposite direction to turn to the right, yet it does not require that such person pass to the right of the center of the street or highway, but all that the statute requires is that he "turn to the right so as to give one-half of the *traveled roadway*." (Italics mine.) The roadway or street may, therefore, be seventy-five or 100 feet wide, while the traveled portion may only be sixteen or twenty feet wide, more or less, and may be entirely on one side of the center of the street or highway. A traveler would thus not violate the statute because he happened to be on the left-hand side going north or west, provided he was on the "traveled roadway" and turned to the right "so as to give one-half" thereof to his fellow traveler. While it may be that the plaintiff was using the south side of the center of the street, yet the evidence is to the effect that he was within the traveled roadway; that is, he traveled where the public, at the place in question, generally travels in passing over the street. If, however, he was farther south than was usual, it may have been because the Ford automobile which was then passing eastward on the crossing was in his way. Whether he was or was not too far south, therefore, was clearly a question for the jury, and not one of law for the court, as contended for by appellant. Moreover, the accident was on a crossing, and the plaintiff had a right to turn from a northerly to a westerly course on the crossing, provided he exercised ordi-

Appeal from Fourth District

nary care in doing so. Whether he exercised such care was a question of fact for the jury. There is no merit, therefore, in the contention that plaintiff was guilty of negligence as a matter of law. Nor is there any cause for complaint respecting the court's instructions.